UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JELENA LIU, *et al.*,                    )
                                         )
        Plaintiffs,                      )
                                         )
                v.                       )        No. 1:25-cv-716-JPH-TAB
                                         )
KRISTI NOEM, *et al.*,                   )
                                         )
        Defendants.                      )

**Plaintiffs' Memorandum in Support of their Motion for a Temporary Restraining Order**

**Introduction**

Less than two weeks ago the plaintiffs ("Students") were all living the life of students, some undergraduate, some graduate, at Purdue University, Indiana University-Indianapolis, and Notre Dame. The only difference between them and many other students is that they are citizens of other countries. But they have been allowed to attend school in the United States by virtue of being afforded F-1 status, a lawful status allowing them to study in the United States provided they abide by the rules governing that status, which all the plaintiffs have done. Nevertheless, with no prior notice whatsoever, the defendants ("the United States") terminated their F-1 status in the SEVIS ("Student and Exchange Visitor") system, the web-based system that the Department of Homeland

Security ("DHS") uses to maintain information concerning F-1 students studying in the United States.[1]

This termination has led to the Students suffering immediate and irreparable harm as the termination of their F-1 status not only prevents them from continuing their studies but requires them to depart the United States and, if they do not, puts them at risk of involuntary removal with all its attendant consequences. Their education has been disrupted and their futures have been placed in jeopardy. For those who were employed by their universities, their employment has been terminated. They are deemed to be unlawfully present in the United States, which may significantly affect their future chance of reinstating their F-1 student status.[2] And they are forced to live with the fear that at any moment they may be placed into removal proceedings and deported.

The terminations of the Students' SEVIS records represent final agency action by the United States and the United States's actions violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B), as they are arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law and the Constitution. Moreover, once established, the Students have an entitlement to their F-1 status unless specific regulatory standards

---

[1]    *See* United States Department of Homeland Security, *About SEVIS,* https://studyinthestates.dhs.gov/site/about-sevis (last visited Apr. 13, 2025).

[2]    Pursuant to 8 C.F.R. § 214.2(f)(16)(i)(A), a student may be reconsidered for reinstatement to F-1 student status only if they have not been out of status for more than 5 months, absent exceptional circumstances.

are met and, inasmuch as those standards are not met here and the Students have been afforded no opportunity to demonstrate their continuing entitlement, the actions of the defendants also violate basic principles of due process guaranteed by the Fifth Amendment to the United States Constitution.

Because of the serious and continuing harm that the Students are suffering, they request that this Court grant a temporary restraining order to set aside the termination of their F-1 statuses in the SEVIS system.

**Legal background**

The F-1 program is created by 8 U.S.C. § 1101(a)(15)(F). The F-1 visa itself is a document that allows a foreign nonimmigrant to travel to the United States to study.[3] This is to contrast with F-1 status, which is the legal status that allows a nonimmigrant student to study in the United States.[4] An academic institution must file an application with DHS's Student and Exchange Visitor Program, using SEVIS, to obtain approval to sponsor a student's F-1 status. 8 C.F.R. § 214.3. Each school has a Designated School Official ("DSO") who monitors the student and who issues an I-20 form, which

---

[3]    U.S. Dep't of State-Bureau of Consular Affairs, *Student Visa*, https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited Apr. 13, 2025).

[4]    U.S. Dep't of Homeland Sec., *Study in the States-Maintaining Status*, https://studyinthestates.dhs.gov/students/maintaining-status (last visited Apr. 13, 2025).

[3]

memorializes the student as someone admitted to the United States pursuant to the F-1 visa.[5]

A student fails to maintain F-1 status if they fail to maintain a full course of study, engage in unauthorized employment[6], provide false information to DHS, or are convicted of a crime of violence for which a sentence of more than one year may be imposed. 8 C.F.R. § 214(e)-(g); 8 C.F.R. 214.2(f). If a student fails to maintain their F-1 status they must depart the United States immediately or seek reinstatement of the status. 8 C.F.R. § 214.2(f)(5)(iv), 8 C.F.R. § 214.2(f)(16).

Once a student completes their course of study, they have 60 days to leave the United States or to seek a transfer of the F-1 status to another institution. 8 C.F.R. § 214.2(f)(8). Students who voluntarily withdraw from the F-1 program have 15 days to leave the country. 8 C.F.R. § 214.2(f)(5)(iv). But "an F-1 student who fails to maintain a full course of study without approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure." *Id*.

While F-1 status may be lost as noted, DHS's ability to terminate F-1 student visas is limited by 8 C.F.R. § 214.1(d), which provides that status can be terminated only when:

---

[5]    U.S. Dep't of Homeland Sec., *Study in the States*, https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited Apr. 13, 2025).

[6]    Students with F-1 status may engage in on-campus employment. 8 C.F.R. § 214.2(f)(9).

(1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *See also Jie Fang v. Dir. U.S. Immig. Customs & Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019).

F-1 status is different than the F-1 visa, the latter of which is, as noted, merely a piece of paper issued by the United States. The status, memorialized in the SEVIS system, does not necessarily change if the visa is revoked: this is stressed by DHS's own policy guidance, which provides that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[7] Visa revocation can be charged as a ground for removability in removal proceedings, 8 U.S.C. § 1227(a)(1)(B), (C); 8 U.S.C. § 1201(i).  In such a proceeding brought against a person who had an F-1 visa, the Immigration Judge has no ability to review and reverse the SEVIS termination because that process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183. There are no procedures provided to challenge the loss of F-1 status in SEVIS.

**Facts**

The facts of each Student are set out in their Verified Complaint for Declaratory and Injunctive Relief. Each of them have been allowed entry into the United Staes

---

[7]     *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) at 3, available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf (last visited Apr. 10, 2025).

pursuant to F-1 visas and have been studying at Indiana universities. (Dkt. 1 at ¶¶ 39-41; 51-52, 57;  67-68; 80-81, 84; 92, 94-95;  104, 106, 107; 114, 118). Each of them have fully complied with the requirements to maintain their visas. (*Id.* ¶¶ 43, 47; 58, 63; 75; 89; 101; 111; 127).  They are students in good standing at their universities and have, in fact, excelled in their studies. (*Id* ¶¶  44; 59; 70; 87; 93; 105; 115).  Nevertheless, each of them was recently notified by their schools that DHS had terminated their SEVIS record and lawful F-1 status and that they could no longer have any employment.  (*Id.* ¶¶ 45; 60; 71; 88; 97; 108; 121). To the extent any reason was given, the Students were informed in their notice from the DSO that their "SEVIS record and F-1 status were terminated . . . . for the reason: OTHER-Individual identified in criminal records check and/or has had their VISA revoked." (*Id.* ¶¶ 71; 88;97; 108; 121). Yet, a number of the Students have no criminal records. (*id.* ¶¶ 43, 58), and the ones that do have not committed any offenses that would cause them to lose their status (*id.* ¶¶ 72-73; 85-86; 95-96; 110; 126). Some of the Students received warnings, either from their school or the State Department, that because of their termination in the SEVIS program they were no longer lawfully in the United States and risked detention and deportation if they remained. (*Id.* ¶¶ 74; 99; 122). However, whether formally warned or not, the Students are aware of that possibility. (*Id.* ¶¶ 66; 79; 91; 103; 113; 129).

The termination of their SEVIS record and the loss of their F-1 status is devastating to each of the Students. They will not be able to complete their studies. (*Id.* ¶¶ 49-50; 66;

77-79; 91; 103; 113; 129). Their lives have been disrupted in numerous other ways. Jelena

Liu is receiving medical care that she might not be able to receive if she is removed. (*Id.*

¶ 49). Xilai Dai, Zhaorui Ni, and Jideofor Odoeze are all doctoral students who have now

lost their sole source of income as they are no longer able to be instructors or researchers

at their universities. (*Id.* ¶¶ 100, 109, 125). Mr. Odeoze and his wife, who is here pursuant

to F-2 status (which applies to the spouses of persons with F-1 status and terminates

automatically should their spouse lose status[8]), are the parents of two small children who

are American citizens. (*Id.* ¶¶ 119-20).  But of course, the most significant harm is the

sheer dread over their future, and the fact that at any point they may subject to

involuntary removal, which would have devastating consequences on the ability to

return to the United States in the future, if they do not voluntarily remove themselves.

(*Id.* ¶¶  50; 66; 79; 91; 103; 113; 129). Indeed, Mr. Dai  received a notice from the United

States Embassy in Beijing that states "deportation can take place at a time that does not

allow the person being deported to secure possessions or conclude affairs in the United

States. Persons being deported may be sent to countries other than their countries of

origin." (*Id.* ¶¶ 98-99 ). Mr. Zhu received a similar notice. (*Id.* ¶ 74). Mr. Odeoze's nnotice

from a school official ominously states that "[t]here is no grace period with this

termination." (*Id.* ¶¶ 121-22). This is the terror that the Student are having to live with,

---

[8]      *See* 8 C.F.R. § 214.2(f)(15); U.S. Dep't of Homeland Security-Study in the States, *Terminate or Reactivate a Dependent Record*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records /dependents/terminate-or-reactivate-a-dependent-record (last visited Apr. 14, 2025).

despite the fact that they have complied with every requirement necessary to maintain their SEVIS record and their status.

## Standard of Review

As this Court has noted:

> The same standards apply to temporary restraining orders ("TRO") that apply to preliminary injunction orders. To obtain a TRO, the moving party has the burden of showing that: (1) they have a reasonable likelihood of success on the merits; (2) they have no adequate remedy at law; and 3) they will suffer irreparable harm without injunctive relief. If the moving party meets this threshold burden, then the court balances the harm to the movement absent a TRO against the harm to the opposing party if a TRO were granted, and considers the public interest in granting or denying a TRO.

*McCleskey v. Hooks AV, LLC,* No. 1:18-cv-02397-JRS-DML, 2018 WL 5255011, at *1 (S.D. Ind. Oct. 22, 2018) (quotations and citations omitted). The standard is met here.

## Argument

## I.    The Students will prevail on their legal claims

### A.    The termination of the Students' F-1 status violates the Administrative Procedure Act

#### 1.    The termination of the Students' SEVIS records and F- 1 status by the United States represents final agency action

The Administrative Procedure Act ("APA") provides that "[a] persons suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. As a prerequisite to review, the APA requires "final agency action,"5 U.S.C.

§ 702, which generally means that the agency has "completed its decisionmaking process" *Franklin v. Mass.*, 505 U.S. 788, 797 (1992). Under the APA a reviewing court may hold unlawful and set aside an agency's action to the extent it is, among other things, "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706. The actions of the defendants here are unlawful and relief must be granted under the APA.

In *Jie Fang*, the Third Circuit answered the question of whether the termination of a SEVIS record and F-1 status is a final agency action. Here the court was a faced with a situation where the United States had terminated the SEVIS records and the F-1 status of students for alleged fraudulent enrollment in a fictitious American university. 953 F.3d at 174. After reviewing the law noted above concerning F-1 status, the regulatory requirements imposed, and how the status can be lost by the student or terminated by the United States, the court held "that the termination of the students' F-1 visa status in the manner that occurred here is not akin to the initiation of the agency's decisionmaking process. Rather, it is the culmination of the process." *Id.* at 183-84. The court rejected the argument that the students could seek reinstatement of the F-1 status and then if removal proceedings were initiated could raise their claims that the termination of their F-1 status was unlawful as an immigration judge could not review the matter. *Id.* at 185. "The order

the terminating the students' F-1 visa status was therefore a final order for jurisdictional purposes because there was no further opportunity for review." *Id.* The same is true here.

2. **The termination of the Students' SEVIS records and F-1 status by the United States is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as well as being contrary to constitutional right**

The Students have not lost their status because of any actions that they have taken in violation of federal law. They have complied with all the requirements necessary to maintain their F-1 status and remained in good standing in their schools prior to the actions by the United States that terminated their F-1 student status. But, as *Jie Fang* held, termination of status is:

> limited by [8 C.F.R.] § 214.1(d). That provision states: "Termination of status. Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act, by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification the Federal Register, on the basis of national security, diplomatic reasons."

*Id.* at 185 n.100. The court noted that "[n]one of those mechanisms were employed in this case." *Id.* The same is true here.

The Students were informed that their status has been terminated because they had been identified in a criminal records check or they had had their VISAs revoked. None of the Students have been convicted of offenses that would cause them to lose their status. And, the revocation of the visa document, the piece of paper authorizing them to

be in the United States, is not the equivalent to the termination of their F-1 status. The only reasons that the status can be terminated by the United States are set out in the above regulation and "none of those mechanisms were employed in this case." *Id.* The United States concedes that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) at 3, available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04 .pdf (last visited Apr. 10, 2025).

There is therefore no justification for the United States translating the visa revocation into a termination of Students' F-1 status. This is a prime example of an agency action that must be reversed under the APA as an "agency is not free to ignore or violate its regulations when they remain in effect." *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 59. 526 n.20 (D.C. Cir. 1978). "An agency's failure to follow its own regulations has traditionally been recognized as reviewable under the APA." *Head Start Fam. Educ. Program. Inc. v. Coop. Educ. Agency 11*, 46 F.3d 629, 633 (7th Cir. 1995) (footnote and further citation omitted). "Thus, an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Nat'l Env. Dev. Assn's Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (quotation and citation omitted).

On April 10, 2025, the United States District Court for New Hampshire entered a temporary restraining order in a similar case filed by a student where the plaintiff alleged that the defendants, the same defendants as in this case, had unlawfully terminated his

F-1 student status in the SEVIS system. *Liu v. Noem, et al.*, No. 25-cv-133-SE (D. N.H. Apr. 10, 2025) (attached). The court concluded that

> Liu has shown a likelihood of success on the merits of his claim in Count 2, that DHS violated the APA when it terminated his F-1 student status in the SEVIS system. Based on the record before the court, Liu is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706(2)(A).

*Id.* at 3. Similarly, the Students have a likelihood of success on their APA claim as the United States did not comply with 8 C.F.R. § 214.1(d) in the Students' cases as well.[9]

**B.    The Students are likely to prevail on their due process claim**

It is beyond debate that the Due Process Clause of the Fifth Amendment applies to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). A plaintiff claiming a violation of their right to procedural due process must establish "(1) a protected property interest; (2) a deprivation of that property interest by someone acting under color of . . . law; and (3) a denial of due process." *Booker-El v. Superintendent*, 668 F.3d 896, 900 (7th

---

[9]    As explained immediately below, the actions of the United States here also violated due process. While this is an independent ground to grant relief to the plaintiffs, the APA is also violated by agency action that is "contrary to constitutional right." 5 U.S.C. § 706(2)(B). Inasmuch as the United States's action here violate due process, it has also violated this provision of the APA.

Cir. 2012) (citing *Tenny v. Blagojevich*, 659 F.3d 578, 581 (7th Cir. 2011)). These standards are met here.

> 1.     **The Students have a protected property interest in their F-1 status**

"[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citations omitted). Such an interest attaches whenever "benefits are a matter of statutory entitlement for persons qualified to receive them." *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). Thus, in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the Supreme Court reiterated that property interests are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. In other words, "[a] protected property interest exists only when the [government's] discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met,'" *Booker-El*, 668 F.3d at 900 (quoting *Brown v. City of Michigan City*, 462 F.3d 720, 729 (7th Cir. 2006))—that is, such an interest exists when a benefit "can be revoked only 'for cause,'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979)). Time and again, both the Supreme Court and the Seventh Circuit have reiterated these fundamental principles. *See also, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Kentucky*

*Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978); *Bishop v. Wood*, 426 U.S. 341, 344-45 (1976); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Rebirth Christian Academy Daycare, Inc. v. Brizzi*, 835 F.3d 742, 746-47 (7th Cir. 2016); *Colburn v. Trustees of Ind. Univ.*, 973 F.3d 581, 589 (7th Cir. 1992); *Farmer v. Lane*, 864 F.2d 473, 478 (7th Cir. 1988); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987); *Miller v. Henman*, 804 F.2d 421, 424 (7th Cir. 1986).

Here, an international student's F-1 status may only be terminated for "good cause." As noted, "the ability to terminate an F-1 visa is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100.That regulation provides only three circumstances under which a student's F-1 status may be terminated: (a) when "a waiver authorized on his or her behalf under" 8 U.S.C. § 1182(d)(3) or (4) is revoked; (b) when "a private bill to confer permanent resident status on such alien" is introduced; and (c) when notification of the termination is published in the Federal Register "on the basis of national security, diplomatic, or public safety reasons." *See also, e.g.*, *In re Beck*, 2008 WL 3919071, at *2 (BIA July 24, 2008) (nonprecedential) ("With a few unusual exceptions, *see* 8 C.F.R. § 214.1(d), the regulations do not authorize the DHS, or any other entity, to 'terminate' or 'revoke' an alien's F-1 status; instead, the regulations contemplate only that an alien admitted in F-1 status may, by his or her own actions or omissions, fall 'out of status' or 'fail to maintain status.'").

[14]

The inability to terminate a student's F-1 status unless specific preconditions are met confers a protected property interest and, with it, the protections of the Due Process Clause.[10]

### 2.    The Students have suffered a deprivation of their property without being afforded any process whatsoever

Insofar as the Students possess a property interest in maintaining their F-1 status, the remaining questions to be asked are whether they suffered a deprivation of their property and whether constitutionally adequate process was provided. *See Booker-El*, 668 F.3d at 900. Neither can be seriously disputed.

The deprivation here is clear. The Students' F-1 status was terminated such that they cannot continue their studies in the United States and must instead promptly depart the country: this is the quintessential deprivation of property. *See, e.g.*, *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983) (describing actions even short of "revocation or nonrenewal" of a license that constitute a deprivation of property), *overruled on other grounds by Brunson v. Murray*, 843 F.3d 698, 713-14 (7th Cir. 2016).

And this is not a case that hinges on the occasionally difficult determination of *how much* process is due, for absolutely no process was afforded to the Students. The

---

[10]    The Students acknowledge that the district court in *Louhghalam v. Trump*, 230 F. Supp. 3d 26 (D. Mass. 2017), concluded that "F-1 plaintiffs have no property or liberty interest in [their] visas and thus no due process claim with respect to the supposed revocation." *Id.* at 36.  In reaching this conclusion, the court did not even mention 8 C.F.R. § 214.1(d), and the only case on which it relied—*Knoetze v. United States*, 634 F.2d 207 (5th Cir. 1981)—did not concern F-1 status at all.

fundamental requisite of due process of law is the opportunity to be heard," *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), and at the very least due process thus requires "some kind of notice and . . . some kind of hearing," *Goss v. Lopez*, 419 U.S. 565, 579 (1975); *see also, e.g., Zinerman v. Burch*, 494 U.S. 113, 127-28 (1990) (noting that "the Court usually has held that the Constitution requires some kind of hearing before the State deprives a person of liberty or property" and collecting cases) (emphasis omitted). Here, absolutely none of the hallmarks of due process were provided to the Students prior to—or even after—the termination of their F-1 status. This process-less termination thus ran afoul of the Fifth Amendment.

## II.    The other factors weigh in favor of issuance of the temporary restraining order

The severe and irreparable harm that the Students are enduring and will continue to face in the absence of equitable relief cannot be seriously disputed. The Students not only face the disruption of their education and future careers, no trifling matter, but face deportation. Quite naturally this is causing severe anxiety and emotional injury to each of the Students. As the court stated in granting the temporary restraining order in *Liu*,

> This loss of academic progress alone is sufficient to establish irreparable harm. Further, the change in Liu's status in the SEVIS system may expose him to a risk of detention or deportation . . . . [T]he uncertain link between Liu's SEVIS status and the possibility of detention and deportation is causing him emotional harm. Liu has shown that, with a TRO, he will suffer irreparable harm for which an award of monetary damages would not be sufficient.

*Liu*, slip. op at 4.

[16]

The United States will suffer no harm if a temporary restraining order is entered. Even if there were some basis to terminate the Students' F-1 status—and there is not—there was no compelling need for the United States to act with such profound dispatch and to do so without affording the most rudimentary opportunity for the plaintiffs to be heard. The temporary restraining order will merely maintain the status quo that existed before early April of this year. And it would certainly "serve the public interest to ensure that defendants follow the law." *Friends of Blue Mound State Park v. Wisc. Dep't of Nat. Res.*, No. 21-cv-676-jdp, 2024 WL 1328478, at *4 (W.D. Wisc. Mar. 28, 2024).

**Conclusion**

All the requirements for the grant of a temporary restraining order are met and one should issue ordering the United States to set aside the terminations of the Students' SEVIS record and their F-1 status. Once the temporary restraining order is issued, the Court should set a schedule for resolution of the motion for preliminary injunction.[11]

---

[11]    Inasmuch as the temporary restraining order will not cause any monetary injuries to the United States, it should issue without bond. *See, e.g., Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (noting cases that "allow a district court to waive the requirement of an injunction bond [where] the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction").

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org


Sarah L. Burrow
LEWIS KAPPES
One American Square, Suite 2500
Indianapolis, IN 46282
317/639-1210
fax: 317/639-4882
SBurrow@lewis-kappes.com

Attorneys for Plaintiffs

## Certificate of Service

I certify that a copy of the foregoing was served by first-class U.S. postage, pre-paid, on the below-named defendants on this 15th day of April 2025.

Kristi Noem
Secretary
United States Department of Homeland Security
245 Murray Lane SW
Washington, D.C. 20258

[18]

Todd Lyons
Acting Director
United States Immigration and Customs Enforcement
500 12th St., SW
Washington, D.C. 20535

I further certify that a courtesy copy was also sent via electronic mail on the 15th day of April 2025 to:

Shelese Woods
Chief, Civil Division
Office of the United States Attorney-
      Southern District of Indiana
Shelese.Woods@usdoj.gov

_/s/ Kenneth J. Falk_
Kenneth J. Falk
Attorney at Law
