UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JELENA LIU, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Cause No. 1:25-cv-00716-JPH-TAB | |
| | ) | |
| KRISTI NOEM, U.S. SECRETARY OF | ) | |
| HOMELAND SECURITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER**

The Plaintiffs are comprised of seven individuals, only one of whom resides in the Southern District of Indiana. The Plaintiffs have filed this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (B) and, through their Motion for Temporary Restraining Order, ask the Court to order the Department of Homeland Security (DHS) "to immediately reinstate plaintiffs' F-1 student status." In their motion, Plaintiffs seek a temporary restraining order compelling DHS to alter their records in the Student and Exchange Visitor Information System (SEVIS) System of Records. The Court should deny this request because it is procedurally and substantively improper. An emergency motion for a temporary restraining order may only be used to maintain the status quo; it cannot be used to obtain the ultimate relief plaintiffs seek in this case, which is the alteration of their SEVIS record.

Moreover, the premise of Plaintiffs' claim is incorrect—SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status, therefore, Plaintiffs are unlikely to succeed on the merits of their claim. And as to all but one of the Plaintiffs, their claims must be dropped or severed because they do not reside in this district. Finally, Plaintiffs have not met their burden of demonstrating a likelihood of irreparable harm or that a restraining

order is in the public interest.

Based on the foregoing, the Defendants the respectfully request that the Court deny Plaintiffs' Motion for Temporary Restraining Order.

## LEGAL AND FACTUAL BACKGROUND

### A.  Statutory Background

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").

To be admitted in F-1 status, an applicant must first obtain an I-20 form from their university and present the I-20 to a U.S. embassy in their home country and meet certain other criteria. 22 C.F.R. § 41.61(b)(1). If the international student qualifies, the U.S. Department of State will issue the international student a nonimmigrant visa, which is the document allowing the student entry into the United States under the conditions described in federal regulations governing the admissibility of nonimmigrant students. *See id*.; 8 C.F.R. § 214.2(f)(1). If an individual is admitted to the United States as a nonimmigrant student under § 1101(a)(15)(F)(i), DHS may administratively designate them with "F-1" nonimmigrant classification. 8 C.F.R. § 214.1(a)(2).

To maintain F-1 status, a student must "pursue a full course of study" or "engage in authorized practical training[.]" *Id.* § 214.2(f)(5)(i).

## B. SEVIS

Through statute, Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1).

Accordingly, the Secretary of Homeland Security created SEVIS, "which is a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, Student and Exchange Visitor Information System (available at: https://www.ice.gov/sevis/overview) (last visited Apr. 12, 2025). ICE maintains SEVIS records in DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States.").

Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. (Ex. 1, Watson Decl. ¶ 35.) The authority to issue or revoke visas for nonimmigrant students like the plaintiffs' lies with the Department of State, not DHS. (Ex. 1,

Watson Decl. ¶ 36.) SEVIS does not control or necessarily reflect a nonimmigrant student's immigration status. (*Id*.)

### C. Loss of Nonimmigrant Status

An international student may violate the terms of their F-1 nonimmigrant status in several ways. First, if the international student violates any of the terms in the regulations governing nonimmigrant students, they may lose their F-1 status. *See* 8 C.F.R. § 214.2(f) (describing the requirements of maintaining nonimmigrant student status); 8 U.S.C. § 1184(a)(1); Ex. 2, Student in the States, SEVIS Termination. For instance, if an "F–1 student [] is unable to complete the educational program within the time listed on Form I–20" they are "considered out of status." 8 C.F.R. § 214.2(f)(7). And, if a nonimmigrant student fails to comply with the other regulations at 8 C.F.R. § 214.2(f), he or she may become inadmissible and "will depart from the United States." 8 U.S.C. § 1184(a)(1).

Second, the Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's] discretion." 8 U.S.C. § 1201(i)(" the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation."); 22 C.F.R. § 41.122(a)("A consular officer, the Secretary, or a Department official to whom the Secretary has delegated this authority is authorized to revoke a nonimmigrant visa at any time, in his or her discretion."). A revocation may be immediate, prudential, or provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82. If the Department of State immediately revokes a visa, the individual may be removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, absent other factors, does not have a corresponding ground of removability. (Ex. 1, Watson Decl. ¶ 35.)

If a student loses nonimmigrant student status, the student or the school may seek reinstatement. *See* 8 C.F.R. § 214.2(f)(16). To do so, the student must submit a form I-539 to

U.S. Citizenship and Immigration Services (USCIS). *Id.*; Ex. 3, Study in the States, Reinstatement.

### D. Claim by Jelena Liu

According to Plaintiffs' Complaint, Plaintiff Jelena Liu is a citizen of China who is a graduate student at Indiana University – Indianapolis. (Dkt. 1 ¶¶ 39-40.) She obtained a student visa in 2016, but it was revoked. Plaintiff claims it was subsequently reinstated in 2018. (Dkt. 1 ¶ 41.) Liu's information was run against criminal databases and was a verified match to an encounter with Customs and Border Protection on January 3, 2018, at a Port of Entry in Chicago, IL. (Ex. 1, Watson Decl. ¶ 7.) On April 11, 2025, Ms. Liu received an email from Indiana University notifying her that her SEVIS record was terminated on or about April 11, 2025. (Dkt. 1 ¶ 45.) The reason given was "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (*Id.*; Ex. 1, Watson Decl. ¶ 8.) Liu is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 9.)

### E. Claim by Nina Hu

Nina Hu is a Chinese national, born in Ukraine, and an undergraduate at Purdue University in West Lafayette, Indiana. (Dkt. 1 ¶¶ 52-53.) Hu's information was run against criminal databases and was a verified match to a criminal history record for Domestic Battery, Interference with the Reporting of a Crime, by the Lafayette Police Department. (Ex. 1, Watson Decl. ¶ 10.) On April 3, 2025, she was notified by Purdue that her SEVIS record had been terminated. (Dkt. 1-2.) Hu is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 13.)

### F.   Claim by Junde Zhu

Junde Zhu is a citizen of China and an undergraduate at Purdue University in West, Lafayette, Indiana. (Dkt. 1 ¶ 67.) Zhu's information was run against criminal databases and was a verified match to a criminal history record for Criminal Mischief, Public Drunkenness, by the by the Carlisle Police Department. (Ex. 1, Watson Decl. ¶ 14.) On April 9, 2025, the State Department prudentially revoked Junde's F1 visa. (Dkt. 1-4.) The U.S. Consulate General Guangzhou notified Junde that "in reference to your nonimmigrant student (F-1) visa, . . . additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 08-JUN-2027 has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended." (*Id.*) Zhu is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 19.)

### G.   Claim By Xiaotian Yu

Xiaotian Yu is a citizen of China and a graduate student at Purdue University in West Lafayette, Indiana. (Dkt. 1 ¶¶ 80-81.) Mr. Yu had a prior F-1 visa dating back to 2017. (Dkt. 1 ¶ 84.) Yu alleges that in 2022, he was charged with domestic violence in the State of Illinois, although there was no conviction. (Dkt. 1 ¶ 84.) Yu's information was run against criminal databases and was a verified match to a criminal history record for Domestic Battery/Bodily Harm (domestic violence), Domestic Battery/Physical Contact, by the Westmont Police Department. (Ex. 1, Watson Decl. ¶ 18.) On April 7, 2025, the State Department prudentially revoked Xiaotian's F1 visa. On April 9, 2025, Purdue notified Yu that his "SEVIS record and F-1 status were terminated on 4/8/2025 for the reason: OTHER – Individual identified in criminal records check and/or has had their VISA revoked." (Dkt. 1-5.) Yu is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 21.)

### H. Claim By Xilai Dai

Xilai Dai is a citizen of China and a graduate student at Purdue University in West Lafayette, Indiana. (Dkt. 1 ¶¶ 92, 94.) Dai alleges that he returned to China in 2024 and applied to renew his visa. (Dkt. 1 ¶ 95.) He then failed to disclose in his application that he had been arrested in the State of Indiana in 2022. (*Id.*) Dai alleges that his visa was renewed after he disclosed the arrest. He also received a citation for a speeding ticket in December 2024. (*Id.*) Dai's information was run against criminal databases and was a verified match to a criminal history record for Minor Consuming Alcohol, by the Purdue University Police. (Ex. 1, Watson Decl. ¶ 22.) On April 9, 2025, he received an email from the United States Embassy in Beijing that "additional information became available after your visa issued. As a result your F-1 visa with expiration date 14-JUL-2025 has been revoked under Section 221(i) of the United States Immigration and Nationality Act." (Dkt. 1-7.) Dai is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 25.)

### I. Claim By Zhaorui Ni

Zhaurui Ni is a citizen of China and a graduate student at Purdue University in West Lafayette, Indiana. (Dkt. 1 ¶¶ 104, 106.) Zhaorui was charged with criminal trespass and resisting law enforcement in 2024 and received a speeding ticket. (Dkt. 1 ¶ 110.) Ni's information was run against criminal databases and was a verified match to a criminal history record for Resisting Law Enforcement, by the Purdue University Police Department. (Ex. 1, Watson Decl. ¶ 26.) On April 8, 2025, she received an email from Purdue notifying her that her SEVIS record and F-1 status had been terminated for the reason: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked." (Dkt. 1-8.) Ni is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 29.)

**J.   Claim By Jideofor Odoeze**

Jideofor Odoeze is a citizen of Nigeria and a graduate student at Notre Dame in South Bend, Indiana. (Dkt. 1 ¶ 114.) In 2024, Jideofor was charged with domestic battery and disorderly conduct in 2024 and has been charged with speeding. (Dkt. 1 ¶ 126.) Odoeze's information was run against criminal databases and was a verified match to a criminal history record for Domestic Battery Committed in Physical by the South Bend Police Department. (Ex. 1, Watson Decl. ¶ 30.) At that time, records indicated that Odeoze was convicted of this offense. (*Id.*) On April 8, 2025, he received an email from Notre Dame notifying him that his SEVIS record was terminated by DHS for the following reason: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked." (Dkt. 1-9.) Odoeze is not detained by ICE and is not in administrative removal proceedings. (Ex. 1, Watson Decl. ¶ 33.)

All Plaintiffs bring a cause of action under the Administrative Procedure Act, 5 U.S.C. § 706(2). (Dkt. 1 ¶ 131.) Plaintiffs also allege that their due process rights have been violated. (Dkt. 1 ¶ 132.)

**STANDARD FOR ISSUING A TEMPORARY RESTRAINING ORDER**

A temporary restraining order ("TRO") is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction. *Coca–Cola Co. v. Alma–Leo U.S.A., Inc.*, 719 F.Supp. 725, 726 (N.D. Ill. 1989). The purpose of a TRO, similar to that of a preliminary injunction, is to minimize the hardship to the parties pending the ultimate resolution of the suit. *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In this circuit, the standards for a TRO and a preliminary injunction are functionally identical. *Bernina of America, Inc. v. Fashion Fabrics International*, 2001 WL 128164, at * 1 (N.D. Ill. Feb. 9, 2001).

Injunctive relief, including the entry of a TRO, is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied. *See Duct–O–Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314–15 (7th Cir. 1994); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992).

## ARGUMENT

### I.    Plaintiffs' Requested Relief Is Improper

As discussed above, the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had. *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"). Here, however, Plaintiffs seek relief that is inappropriate on a motion for temporary restraining order.

With respect to Plaintiffs' request that the Court order DHS to reinstate their SEVIS record, Plaintiffs do not seek to maintain the status quo, they seek to alter it. Before Plaintiffs filed suit, DHS had updated the SEVIS system to reflect their change in status. And, in this suit, the ultimate relief Plaintiffs seek is the reinstatement of their SEVIS record and an order that DHS cannot take any further action with regard to their status. Accordingly, the status quo is that Plaintiffs' SEVIS record has been terminated and Plaintiffs' request for an emergency order changing that status is inappropriate.

## II.    Plaintiffs Are Not Likely To Succeed on the Merits

### A.  The Non-SDIN Plaintiffs' Claims Must be Dropped or Severed

28 U.S.C. § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. Of Texas*, 571 U.S. 49, 55 (2013). On a venue challenge, the proponent of venue bears the burden to show venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

28 U.S.C. § 1391(e) governs venue in a suit against the federal government and federal officials. Venue in such a suit lies "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Federal Rule of Civil Procedure 20 provides, in part: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a).

Federal Rule of Civil Procedure Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

Here, the "out of jurisdiction" Plaintiffs are improperly joined under Federal Rule of Civil Procedure 20. Although Plaintiffs may attempt to generalize and group their claims together because they each involve the SEVIS, their claim under the APA involves seven different sets of factual circumstances, with each requiring individualized proof and defenses. In short, the Plaintiffs here are bringing seven different cases that do not arise out of the same transaction or occurrence, and they do not present common questions of fact. "As one federal court aptly explained, the sort of bulk pleading at issue here, . . . rather than facilitating judicial economy, in fact defeats and obstructs the orderly and economical adjudication scheme embodied in the federal rules and the administrative policies of the courts." *Ahmed v. Miller*, 452 F. Supp. 3d 721, 726 (E.D. Mich. 2021). Under such circumstances, the Plaintiffs' claims must be addressed separately.

"To be properly joined, claims must (1) arise out of the same transaction, occurrence, or series of transactions or occurrences, *and* (2) contain a common question of fact or law to all plaintiffs." *Parson v. Allstate Ins. Co.*, No. 22-cv-3962, 2023 WL 4999900, at *4 (N.D. Ill. Aug. 4, 2023) (emphasis added) (citing Fed. R. Civ. P. 20(a)). If "the Court finds that joinder is improper, Rule 21 comes into effect." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009). Under Civil Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "It is within the district court's broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

The two components of the test used by courts to determine proper joinder of plaintiffs are (1) allegations that the claims stem from the same events or series of events; and (2) there must be at least one common question of law or fact linking all claims. "However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (per curiam) (citations omitted); *see also Padilla v. Grams*, No. 11-cv-89, 2011 WL 2441778, at *1 (W.D. Wis. June 14, 2011) (same). If the Court finds that any excess parties are improperly joined, "the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs." *Cruz v. Bristol-Myers Squibb Co.*, 699 F.3d 563, 569 (1st Cir. 2012).

The Complaint here asserts that only Plaintiff Jelena Liu resides in this district. Plaintiffs joined six other individuals who have no connection whatsoever to the Southern District of Indiana. Moreover, the Defendants are officials of governmental agencies in the District of Columbia. Because Plaintiffs allege that only one Plaintiff resides in this district and the remaining Plaintiffs apparently have no connection whatsoever to this district, this action should have been brought in that district or the District of Columbia. The Court should therefore drop or sever the claims of the individual Plaintiffs who do not reside in this district. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or … transfer such case ...."). Plaintiffs will not be burdened by a dismissal or transfer because they may still bring their individual claims in the new district. 8 U.S.C. § 1391(e)(1)(A); *Pars Equality Center v. Blinken*, 2024 WL 4700636, *9 (N.d. Cal. Nov. 5, 2024) ("The Court will, pursuant to 28 U.S.C. § 1406(a), SEVER the claims of the plaintiff

families who do not reside in this district with the intent of transferring them to the appropriate venue.").

Plaintiffs will likely argue that their claims are properly joined in this action because they each involve the SEVIS. But Civil Rule 20(a) does not simply allow that any "series of transactions" be alleged. It requires "the *same* . . . series of transactions or occurrences[.]" *Parson*, 2023 WL 4999900, at *4 (emphasis added); *see also Ahmad v. Keisler*, No. 07-cv-2760, 2008 WL 11337699, at *1 (N.D. Ga. July 21, 2008) ("While the remaining Plaintiffs allege that their . . . applications were wrongfully delayed and the reason for the delay is the FBI background check, these commonalities do not establish that the remaining Plaintiffs' claims arise out of the same transaction or occurrence. Each Plaintiff applied for an F-1 visa at a different time. Each Plaintiff's status was changed in SEVIS for various reasons, and not as a group. *See Cupp v. Harris*, No. 16-253, 2018 WL 4599588, at *6 (E.D. Cal. Sept. 21, 2018) (severing claims because "[u]ltimately, the [complaint] involves completely different plaintiffs, defendants, events, and jurisdictions, and the Court is unable to discern any reason for these claims being brought together"). *Sanders v. Callendar*, No. DKC 17-1721, 2018 WL 337756, at *13 (D. Md. January 9, 2018).

### B.  Plaintiffs Fail to State a Claim Under the Due Process Clause

Plaintiffs claim that "Defendants' termination of the SEVIS immigration records and the termination of their F-1 status without adequate notice and the opportunity to meaningfully challenge the termination violates due process." (Dkt. 1 ¶ 132.) Plaintiffs are incorrect. Plaintiffs do not have a protected interest in their SEVIS record and, even if they did, the process available to them satisfies the Fifth Amendment.

"For a plaintiff to establish a procedural due process claim, it must show that (1) it has a

protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)). Plaintiffs have no property interest in a SEVIS record. *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that plaintiff did not have a property interest in his SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students). Additionally, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

For instance, in *Zhao*, a nonimmigrant student on an F-1 visa "dropped below the requisite number of credit hours" so his university updated SEVIS to terminate his nonimmigrant status. *Zhao v. Virginia Polytechnic Institute & State University*, 2018 WL 5018487, at *1–2. (W.D. Va. Oct. 16, 2018). In response, he sued his university and alleged that it had violated his Fifth Amendment due process rights by terminating his SEVIS record. *See id*. at *4–5. The district court, however, dismissed his claim because "termination of Zhao's SEVIS record . . . in the SEVIS database, a clerical duty performed as a preliminary matter and in accordance with federal regulations . . . does not itself engender due process protections." *Id*.

Furthermore, even if Plaintiffs had a protected property interest in their SEVIS record, the process afforded them would satisfy the Fifth Amendment. The process due under the Fifth Amendment is determined by weighing the interest involved with the burden of providing additional procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *Bd. of Regents of*

*State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Here, the review procedures available to plaintiffs satisfy due process. If Plaintiffs have actually lost their lawful nonimmigrant F-1 status as they allege, they could seek reinstatement administratively from USCIS. 8 C.F.R. § 214.2(f)(16) provides that U.S. Citizenship and Immigration Services (CIS) may consider reinstating a student who makes a request for reinstatement on Form I-539, Application to Extend/Change Nonimmigrant Status, accompanied by a properly completed Form I-20 or successor form indicating the DSO's recommendation for reinstatement. *Id.*; *see also* Ex. 3, Study in the States, Reinstatement.

And although none of the Plaintiffs have been placed in removal proceedings, the procedures available to plaintiffs in immigration court more than complies with the Fifth Amendment. 8 U.S.C. § 1229a; *Camara v. Holder*, 705 F.3d 219, 223–24 (6th Cir. 2013) (rejecting due process challenge to removal proceedings).

**C.   Plaintiffs Are Unlikely to Succeed on Their APA Claim**

*a.   The Privacy Act Bars APA Review*

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes preclude judicial review.'" *Id.*

Here, the Privacy Act bars Plaintiffs' APA claim regarding their record. The Privacy Act allows individuals to challenge data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims. 5 U.S.C. § 552a(g)(1). However,

that statute prohibits most noncitizens from filing suit challenging records under the Privacy Act. *See* 5 U.S.C. §§ 552a(a)(2). Therefore, they do not have a valid claim under the APA because the Privacy Act bars such claims. 5 U.S.C. §§ 701–704; As such, the United States has not waived sovereign immunity. 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249, 279 n. 35 (D. Conn. 2008) ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens like [plaintiff] from suing federal agencies to correct their records" and noting that an APA claim would fail under § 702); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act."). Moreover, the Court would lack jurisdiction over any such a claim because Plaintiffs have not exhausted their administrative remedies as required by the Privacy Act. *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 40–41 (D.C. Cir. 1987).

      *b.  The Agency's Action is Not Final*

      The APA provides judicial review only for final agency action. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

      Here, the agency's action is not final because no decision has been made on the Plaintiffs' nonimmigrant status. Even if Plaintiffs' nonimmigrant status (rather than only their SEVIS record) was at issue in this case, Plaintiffs could administratively challenge the relevant

agency decisions. *See* 8 C.F.R. § 214.2(f)(16); 22 C.F.R. § 41.122(b). Further, Plaintiffs cannot establish that the change in their SEVIS record determines plaintiffs' rights or obligations as to their nonimmigrant status or that any legal consequences have flowed from the change of their SEVIS record to set the status as terminated. The SEVIS record is a recordkeeping tool used by DHS and universities to manage the Student and Visitor Exchange Program. Accordingly, Plaintiffs have not identified an agency action that qualifies as final under the APA.

c.   *The Termination of the SEVIS Records Was Not Arbitrary and Capricious*

Even if an action is reviewable under the APA, a court may only set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Court must review agency determinations with great deference, *see F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009), and the court cannot substitute its judgment for that of the agency, *see Dep't of Com. v. New York*, 588 U.S. 752 (2019).

Here, the only action at issue is DHS's change to Plaintiffs' SEVIS records. This action was not arbitrary and capricious. SEVIS records may be set to terminated for numerous reasons by DHS and by a university. (Ex. 2, Study in States, SEVIS Terminations). DHS received information of criminal history related to the plaintiffs and set Plaintiffs' SEVIS records to terminated as a result. (*See generally* Watson Decl.) Accordingly, Plaintiffs could not succeed on their APA claim based on the evidence in the record at this stage, even if the termination of their SEVIS record were reviewable under the APA.

d.    *Plaintiffs Cannot Enjoin a Removal Action*

As discussed above, DHS has not initiated removal proceedings against any of the Plaintiffs. Nevertheless, Plaintiffs' Motion alleges that they are "currently at risk of being involuntarily removed from the United States. . . ." (Dkt. 3 ¶ 1.) To the extent Plaintiffs seek an

injunction barring the government from initiating removal proceedings, the Court lacks jurisdiction or authority to entertain such a claim.

To initiate the removal process, DHS would first issue plaintiffs a notice to appear at an immigration hearing. 8 U.S.C. § 1229(a). Once removal proceedings are initiated, a noncitizen is entitled to counsel and to have his or her case heard by an immigration judge. *See* 8 U.S.C. § 1229a. If an immigration judge orders a noncitizen removed, he or she can move for reconsideration and appeal to the Board of Immigration Appeals, then the Seventh Circuit. *See* 8 U.S.C. § 1252.

Based on its plain text, the APA does not apply to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). Both limitations apply here. The Immigration and Nationality Act expressly forecloses judicial review of a decision to execute an order of removal. 8 U.S.C. § 1252(g); *Kightlinger v. Napolitano*, 500 Fed. Appx. 511, 515 (7th Cir. 2013) ("District courts do not have jurisdiction over an APA challenge to federal-agency action when another federal statute specifically precludes review.... Here, 8 U.S.C. § 1252 specifically precludes district-court review of Kightlinger's order of removal."); *Garcia v. Dep't of Homeland Sec.*, 2019 WL 7290556, at *3 (N.D. Ill. 2019); *Albarran v. Wong*, 157 F. Supp. 3d 779, 786 (N.D. Ill. 2016). And the Executive Branch is exercising its discretion to remove Gaona Rojas notwithstanding the pending I-130 petition. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483, 487 (1999) (describing the decision to execute removal orders as an exercise of discretion); *Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) ("[T]he APA is not a useful tool for aliens challenging immigration decisions."); *Ardestani v. INS*, 502 U.S. 129, 133 (1991) ("Congress intended the provisions of the Immigration and Nationality Act ... to supplant the

APA in immigration proceedings."); *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

### III.    Plaintiffs Cannot Show Immediate Irreparable Harm

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. NRDC,* 555 U.S. 7, 22 (2008) . "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012); *see also Michigan v. United States Army Corps of Eng'rs*, No. 10-3891, 2011 U.S. App. LEXIS 17714 (7th Cir. 2011); Farris v. Rice, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

Plaintiffs' claims, while sympathetic, do not demonstrate immediate, irreparable harm sufficient to warrant extraordinary injunctive relief. DHS has not initiated removal proceedings against any of the Plaintiffs and no Plaintiffs are being detained. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). Additionally, Plaintiffs are free to depart the United States on their own. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024).

Plaintiffs allege generally that they have lost money or the opportunity for employment. "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted). Additionally, Plaintiffs' allegations of loss to reputational harm are speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id.* at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (while injunctive relief may be ordered to prevent reputational harm, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence").

## CONCLUSION

For the above reasons, the Court must deny Plaintiffs' Motion for Temporary Restraining Order.

Respectfully submitted,

JOHN E. CHILDRESS
Acting United States Attorney

By:    */s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Shelese.Woods@usdoj.gov
Telephone No: (317) 226-6333
Fax No: (317) 226-6125

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2025, a copy of the foregoing was filed electronically.

Service of this filing will be made on the ECF-registered counsel by operation of the Court's

electronic filing system:

<u>/s/ Shelese Woods</u>
Shelese Woods
Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204