UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JELENA LIU, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-716-JPH-TAB |
| | ) | |
| KRISTI NOEM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiffs' Reply in Support of Motion for Temporary Restraining Order**

I. **Introduction**

As the plaintiffs ("Students") demonstrated in their initial memorandum, the revocation of their F-1 status as foreign nonimmigrant students by defendants ("United States") has not only ended their educational opportunities, but left them open to immediate detention and removal from the United States. The actions of the United States here are unlawful and unconstitutional and this Court should join numerous other courts in granting a temporary restraining order to prevent immediate and ongoing harm that is truly irreparable. In arguing against a temporary restraining order, the United States ignores what the Students are seeking in this case—restoration of their F-1 status—and ignores the applicable law that dictates that the Students are likely to prevail on their claims.

Due to the urgency of this matter, the Students have no objection to the Court issuing its ruling on the papers before it.

## II. This case concerns the termination of the Students' immigration *status*, not merely a change in the United States's record-keeping system

A single error percolates much of the United States's brief: it repeatedly insists that this case is about an alteration of the Students' immigration *records* and not about the termination of their immigration *status*. That is simply not the case.

The Student Exchange Visitor Information System, or SEVIS, "is the Web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program (SEVP)-certified schools, [and] F-1 and M-1 students who come to the United States to attend those schools." U.S. Immigration & Customs Enforcement, *Student Exchange Visitor Information System*, at https://www.ice.gov/sevis/overview (last visited Apr. 16, 2025). *See also* attached Declaration of Angela D. Adams ["Adams"] ¶¶ 6-8). Thus, although "SEVIS" may occasionally be employed as shorthand for a student's immigration status, the two are distinct. While notification of the termination of the Students' F-1 status may have been generated and disseminated to their schools through SEVIS, they are concerned in this case not with the accuracy of records maintained in the United States's "Web-based system"—although certainly they hope that the United States's records are as accurate as possible—but with the actual termination of their F-1 status.

[2]

The United States's repeated attempt to make this case about its own record-keeping not only is off-base, but downplays the dramatic harm that the Students are suffering right now. That harm is only tangentially related to the accuracy of their records.

### III. The claims of all seven Students are properly before this Court

As an initial matter, the United States argues that this Court is not the proper venue for the plaintiffs who do not reside in the Southern District of Indiana. This is simply incorrect. The venue statute, 28 U.S.C. § 1391(e)(1)(C), provides that if the defendant is an officer or employee of the United States, the action may be brought where "the plaintiff resides." As the Third Circuit has explained in rejecting an argument identical to the one made by the United States here,

> requiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction. There is no requirement that all plaintiffs reside in the forum district.

*Exxon Corp. v. F.T.C.*, 588 F.2d 895, 898-99 (3d Cir. 1978) (citing cases), *overruled on unrelated ground by Reifer v. Westport, Ins.*, 751 F.3d 129, 138 (3d Cir. 2014). Indeed, "[e]ach court faced with the same issue has interpreted 'the plaintiff' to mean 'any plaintiff,' finding that Congress intended to broaden the number of districts in which suits could be brought against government entities." *Sidney Coal Co., Inc. v. Social Sec. Admin.*, 427 F.3d 336, 344-45 (6th Cir. 2005). In *Sidney*, the court further commented that "the district court

[3]

correctly noted that the broad interpretation [of 'the plaintiff' in § 1391] is not only the majority view—it is the only view adopted by the federal courts since 1971." *Id.* at 345 (quotation and footnote omitted) (citing cases).

Clearly, therefore, venue in the Southern District is proper for all seven Students. But the United States argues further that the Students' claims are not properly joined together under Fed. R. Civ. P. 20. Rule 20(a)(1) provides that plaintiffs may be joined together if:

> (A)  they assert any right to relief jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)  any question of law or fact common to all plaintiffs will arise in the action.

The United States argues that all seven Students present different factual claims and therefore cannot be joined together in this action. This ignores both the nature of the Students' claims and the requirements of Rule 20.

As the Students have each demonstrated in their verified complaint, they have done everything necessary to maintain their F-1 status and have not violated the requirements imposed on them by federal regulations. *See* 8 C.F.R. § 214.f(2)(e)-(g). The United States does not disagree. And the United States concedes in the Declaration of Andre Watson (Dkt. 15-1 at 3-6) that the Students' F-1 statuses have been terminated for reasons other than those that both regulations and case law identify as the only reasons that the status can be terminated. *See* 8 C.F.R. § 214.1(d); *Jie Fang v. Dir. U.S. Immig.*

[4]

*Customs & Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). The fact that the United States may have a different justification for each termination does not alter the fact the question presented in the case is the same for each Student, *i.e.*, whether terminating the F-1 status for reasons other than those explicitly allowed is lawful and whether the absence of a process to challenge these terminations is constitutional.

Rule 20(a)(1)(A) requires that plaintiffs' claims arise from "the same transaction, occurrence, or series of transactions or occurrences." As this Court has noted, while there is "no hard and fast rule for determining" whether this requirement is met, "courts will analyze the facts of each case and consider when the alleged conduct occurred, whether the same people were involved, whether the conduct was similar, and whether it implicated a system or decision-making or widely-held policy." *Hawkins v. Alorica, Inc.*, No. 2:11-cva-283-JMS-WGH, 2012 WL 5364434, at *2 (S.D. Ind. Oct. 20, 2012) (quotation and citation omitted). Here, all the Students lost their F-1 status at approximately the same time; the challenged actions were all taken by DHS; the conduct is identical (*i.e.*, the termination of F-1 status); and the conduct is clearly the product of system-wide decision-making, as can be seen by what has happened both to the Students and to other similarly situated foreign nonimmigrant students throughout the United States. The requirements of Rule 20(a)(1)(A) are met.

Under Rule 20(a)(1)(B), "[t]he common question need not predominate; that's a requirement for class actions, not for permissive joinder." *Lee v. Cook Co., Ill.*, 635 F.3d 969,

[5]

971 (7th Cir. 2011). But here, the common legal question does predominate, *i.e.*, can the United States terminate the F-1 status of the Students in clear violation of 8 C.F.R. § 214.1(d), which allows termination for only three reasons that are not present here?

The ultimate question "is whether the claims are logically related." *Spearman v. Tom Wood Pontiac-GMC, Inc.*, No. IP-00-1340-C-T/G, 2000 WL 33125463, at *6 (S.D. Ind. Dec. 22, 2000) (cleaned up). The claims are most certainly all logically related—they are identical—and answering the legal question noted above will resolve all of the cases.

Joinder of all the Students in this case and in this district is appropriate under both 28 U.S.C. § 1391 and Rule 20.

## IV. The Students will prevail on their due process claim

### A. The Students possess a property interest in their F-1 status

The United States does not dispute that a property interest triggering the protections of the Due Process Clause exists whenever an individual "cannot be denied the interest unless specific conditions are met." *Booker-El v. Superintendent*, 668 F.3d 896, 900 (7th Cir. 2012) (citation omitted). Nor does it even dispute that it may only terminate a student's F-1 status when one of the three preconditions established by 8 C.F.R. § 214.1(d) is met. *See Jie* Fang, 935 F.3d 172 at 185 n.100. Under a wide array of precedents previously cited by the Students (*see* Dkt. 4 at 13-14), the only remaining question should be whether the Students were afforded constitutionally adequate process to challenge the termination of their F-1 status.

[6]

Nonetheless, the United States contends that the Students "have no property interest in a SEVIS record." (Dkt. 15 at 14). But, as articulated above, a SEVIS record is merely an electronic record-keeping system; it is not, in and of itself, an immigration status. Again, the Students in this case are concerned with their F-1 status—a status regulated by federal law and terminable only for specific reasons—not with how that status is memorialized by DHS. Notably, not one of the cases relied upon by the United States concerns the actual termination of a student's F-1 status:

- In *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *5-6 (W.D. Va. Oct. 16, 2018), a student sued his university for "the ministerial act of modifying [his] SEVIS record" thus requiring him only to "confer with [school] officials prior to registering for a new academic term; to the extent that the record implicated the plaintiff's "immigration status," whatever due process he is owed with respect to these issues is the prerogative of and provided in the immigration courts, not the hallways of Virginia Tech."  The court did not even purport to address any process that the United States is obligated to provide, although it appeared to assume that the termination of a student's F-1 status may be meaningfully challenged through the immigration system. As this case makes clear, that is simply not true.

- The United States relies on *Backhtiari v. Beyer*, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008), only for its holding that certain regulations concerning the SEVIS system do not confer a private right of action, an issue clearly not relevant to this case.

- And, while the district court in *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35-36 (D. Mass. 2017), held that a student with F-1 status has no property interest in their *visa*, a visa differs significantly from an immigration *status*: a visa is merely an entry document—the plaintiffs in *Louhghalam* were both lawful permanent residents detained at Boston Logan International Airport based on an Executive Order prohibiting entry from seven specific countries—and says very little about an individual's *status*.

Despite the fact that the Students' entitlement to their F-1 status hinges entirely on 8

[7]

C.F.R. § 214.1(d), the United States does not once cite that regulation in contending that its actions comply with due process. That omission is fatal, for the principle that a property interest exists whenever a benefit can only be terminated "for cause" is beyond dispute. The Students clearly possess a property interest in their F-1 status.

B.   **The Students have not been afforded constitutionally adequate process**

The United States does not dispute that the Students have been afforded no opportunity whatsoever to challenge the actual termination of their F-1 status. Again, that should be the end of this inquiry, for the most fundamental requirement of due process is that persons be afforded "some kind of notice and . . . some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579 (1975). And, with exceedingly rare exceptions, this process must be made available *before* the deprivation takes effect. *See Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990). Ignoring this requirement of a pre-deprivation hearing, the United States nonetheless contends that two processes are available to the Students.

First, it suggests that they may simply seek reinstatement from the United States of their F-1 status. Across the country, the United States is revoking the F-1 status of hundreds if not thousands of international students. *See, e.g.*, Annie Ma, et al., *Visa cancellations sow panic for internal students, with hundreds fearing deportation*, Associated Press, Apr. 15, 2025, *at* https://apnews.com/article/international-student-f1-visa-revoked-college-f12320b435b6bf9cf723f1e8eb8c67ae (last visited Apr. 16, 2025). Given this, the United States's suggestion that all these students have to do is ask again must be taken

with a grain of salt. In any event, the United States's argument is the functional equivalent of saying that a recipient of public benefits has no right to challenge the termination of those benefits because she may always reapply. *But see Goldberg v. Kelly*, 397 U.S. 254, 263-64 (1970). If that were not enough—and it most certainly is—the reinstatement of F-1 status under 8 C.F.R. § 214.2(f)(16) is wholly discretionary with the United States ("USCIS *may* consider reinstating . . .") and appears to be limited to unforeseeable events such as "serious injury or illness," "a natural disaster," or a school's "oversight." And regulations are clear that no appeal will lie from the discretionary denial of reinstatement. 8 C.F.R. § 214.2(f)(16)(ii). *See also Jie Fang*, 935 F.3d at 183 ("Even if the students are successfully reinstated by USCIS, they will have achieved that status without ever having undergone review of the initial termination . . . decision. Accordingly, reinstatement does not provide an opportunity to 'completely wipe away' a prior agency decision. Nor does it provide a step that 'the immigration can take to have an action reviewed within the agency.'") (internal footnotes omitted).

And second, the United States contends that the Students will receive procedural protections if and when removal proceedings are initiated against them. Initially, SEVIS termination and its consequences are not reviewable by immigration courts. (Adams ¶ 17). But, more fundamentally, the Students have lost their F-1 status *today*: they cannot continue their education, those employed through their universities have been terminated, and they are required to immediately depart the United States as the notices

[9]

received by some of the Students directed them to do. (*See, e.g.*, Dkt. 1-7). The United States's willingness to potentially afford them process at some indeterminate point in the future *if* they choose to stay in the country without lawful status, *if* removal proceedings are initiated against them, and *if* those proceedings allow for a challenge to the termination of their F-1 status cannot be reconciled with fundamental due-process principles (which, among other things, require a pre-deprivation hearing). *See Jie Fang*, 935 F.3d at 183-84. Indeed, as noted previously, an order of involuntary removal would carry significant collateral consequences on an individual's ability to return to this country, *see* 8 U.S.C. § 1182(a)(9)(A), and the United States's insistence that students must risk these consequences simply to challenge the termination of their F-1 status would dramatically disincentivize the exercise of their constitutional rights.

*     *     *

The Students' due process claim is exceedingly simple. Federal regulations provide that an international student's F-1 status may only be terminated for cause. That creates a property interest. The Fifth Amendment therefore requires that students be provided with a meaningful opportunity to challenge a termination before that termination takes effect. That has not been provided. The United States does not even attempt to dispute any of this, and its arguments cannot be reconciled with wide-ranging precedent. The Students are likely to prevail on their due process claim.

**V.     The Students will prevail on their Administrative Procedure Act claim**

[10]

### A. The Privacy Act does not bar review of the United States's actions here

Certainly, the Privacy Act provides individuals with a cause of action to view government records about themselves or to challenge, under certain circumstances, the correctness of data maintained in governmental recordkeeping. 5 U.S.C. § 552a(g)(1). But the Students have raised no claim under the Privacy Act, and it simply does not apply. The Students are not seeking to access or challenge the correctness of the United States's recordkeeping. They are not challenging "the data contained in a government system of records" (Dkt. 15 at 15), nor are they asking the United States to correct any data. This is not a case about date, it is about status. The Students' rights have been violated by the termination of their F-1 status, full stop. The fact that this violation happens to be reflected in government records is of no moment.

The cases cited by the United States are not to the contrary and, unsurprisingly, involve circumstances in which plaintiffs sought to access, expunge, or correct data maintained about them in government records. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 279 n. 35 (D. Conn. 2008) (expungement of inaccurate records); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009) (correction of inaccurate records); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995) (access to government records); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) (access to government records under Privacy Act). The Students do not do so here, and the Privacy Act does not apply. What does apply is the Administrative Procedure Act and

the United States does not, and cannot contend, that sovereign immunity precludes the Students' APA claim. *See* 5 U.S.C. § 702; *Bowen v. Massachusetts*, 487 U.S. 879, 891-901 (1988).

**B.     The termination of the Students' F-1 status is final agency action**

To repeat, the issue in this case is the termination of the Students' F-1 status. The termination of the Students in the SEVIS program has served to memorialize the termination of their F-1 status. Each Student has been explicitly informed that their lawful F-1 status in the United States has now been terminated. (*See* Dkt. 1-1, 1-2, 1-3, 1-5 at 2, 1-6, 1-8, 1-9 at 1). If F-1 status is lost, a student is no longer lawfully in the country and must leave immediately or seek reinstatement of the status. 8 C.F.R. § 214.2(f)(5)(iv); 8 C.F.R. § 214.2(f)(16). Failure to leave subjects the former student to immediate detention and involuntary removal. 8 U.S.C. § 1227(a)(1)(C)(i) ("Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status . . . or to comply with the conditions of any such status, is deportable."); *see also* Adams ¶ 13 ("a violation of status is serious and can lead to deportation").

The United States argues that there is no final agency action here because the Students can challenge the decisions under 8 C.F.R. § 214.2(f)(16) and 22 C.F.R. § 41.122(b). However, the latter regulatory section concerns revocation of visas, not termination of status. As the Students have noted previously, there is a clear distinction, conceded by the United States, between revocation of a visa and loss of F-1 status: "Visa

revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) at 3, available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf (last visited Apr. 10, 2025); *see also* Adams ¶ 15 ("Both the Department of State and ICE have stated that visa revocation has no effect on visa status.").

And the citation to 8 C.F.R. § 214.2(f)(16) is a citation to the regulatory section that allows for reinstatement of F-1 status. The United States cites to this section despite the fact that the *Jie Fang* case, the one case that has addressed this question, specifically held that "reinstatement proceedings are not a prerequisite to finality because reinstatement is not a mechanism by which students can obtain review of DHS's decision to terminate their [F-1] status." 935 F.3d at 183. The *Jie Fang* court stressed that a former student would not even be able to contest the determination to remove their F-1 status in a removal proceeding. *Id.* at 185. The United States does not cite to *Jie Fang*, but this does not make the case go away. It is clear that the decision to terminate the Students' F-1 status is a final agency action. It is therefore subject to challenge under the Administrative Procedure Act.

**C. The termination of the Students' F-1 status by the United States is arbitrary, capricious, an abuse of discretion, and contrary to law and constitutional right**

The United States argues that changing the Students' SEVIS records because it received certain information concerning the Students was not arbitrary, capricious, or contrary to law. However, this myopically ignores the Students' claim. The issue in this

[13]

case is that the United States terminated the Students' F-1 status by terminating their SEVIS records. And, to repeat, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Terminating the Students' status for any other reason, as the United Staes has admittedly done, is the quintessential example of a decision that is arbitrary, capricious, and contrary to law as an "agency is not free to ignore or violate its regulations." *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 59, 526 n.20 (D.C. Cir. 1978). The Students have a likelihood of success on their APA claim.[1]

## VI.     The Students are facing immediate, irreparable harm

The United States does not dispute that, at any moment, the Students could be swept from their homes, their schools, or their city streets and placed in an immigration detention facility. The most the United States is willing to expressly acknowledge is that none of the Students is, as of the filing of the United States's brief, detained. (Dkt. 15 at 19). There is nothing contingent or speculative about these harms. As one court recently concluded, this "link between [the plaintiffs'] SEVIS status and the possibility of detention and deportation is causing [them] emotional harm" that is irreparable. (Dkt. 4-1 at 4 [*Liu v. Noem, et al.*, No. 25-cv-133-SE (D. N.H. Apr. 10, 2025)]). The *Liu* court concluded that just the "loss of timely academic progress alone is sufficient to establish

---

[1] The United States argues the Students cannot enjoin a removal action. The Students are not attempting to do so. They are attempting to enjoin the United States to comply with both the APA and due process concerning the termination of their F-1 status, and are accordingly seeking an order reinstating that status.

[14]

irreparable harm" (Dkt. 4-1 at 4). As another court noted in issuing a restraining order in nearly "[l]osing F-1 status places Plaintiffs' education, research, financial stability, and career trajectories at imminent risk of irreparable harm." (Dkt. 20-2 at 8 [*Roe, et al. v. Noem, et al.*, No. CV 25-40-BU-DLC (D. Mont. Apr. 15, 2025)]). The loss of their F-1 status has upended their lives, and they will have no relief from the consequences until an injunction issues.[2]

## VII. Conclusion

All the requirements for the grant of a temporary restraining order are met and one should issue ordering the United States to set aside the terminations of the Students' SEVIS record and their F-1 status. Once the temporary restraining order is issued, the Court should set a schedule for resolution of the motion for preliminary injunction.

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

---

[2]   The United States does not dispute that the Students have met the other factors for a temporary restraining order. Nor does it argue that a bond should be posted as a condition of receiving the order.

Sarah L. Burrow
LEWIS KAPPES
One American Square, Suite 2500
Indianapolis, IN 46282
317/639-1210
fax: 317/639-4882
SBurrow@lewis-kappes.com

Attorneys for Plaintiffs