STATE OF INDIANA )
):ss
COUNTY OF MARION )

## Second Declaration of Angela D. Adams

I, Angela D. Adams, declare the following under penalty of perjury:

1. I am over 18 years of age and am fully competent to make this declaration. I have over 20 years of experience as a licensed immigration attorney. I earned my Juris Doctor in 2004, received bar admission in Indiana in October 2004 and have practiced immigration law since 2004. I am admitted in the State of Indiana and in good standing.

2. Since obtaining my license in 2004, I have been practicing in the areas of employment-based and family-based immigration law, including immigration in higher education and student visa issues. I have been a member of the American Immigration Lawyers Association ("AILA") since 2002. As a member of AILA, I have served in various volunteer positions, including providing guidance to members on academic immigration issues, through practice advisories, speaking engagements, and I served as the AILA Indiana Chapter Chair as well as a member of national committees. I have been recognized for my local and national work in immigration law. I am currently the founder and Managing Attorney in the law firm Adams Immigration Law, LLC.

3. My immigration law practice focuses on academic, medical, business, and family immigration, with expertise in F-1 and J-1visa categories, their derivatives, and institutional sponsorship obligations including detailed knowledge of the F-1 international student program, the Student & Exchange Visitor Information System (SEVIS), and the laws, regulations, and legal guidance related to SEVIS and international students in F-1 status.

4. As of 2003, all U.S. academic entities who wish to sponsor international students must go through a certification application process (for F and M sponsorship permission) or designation process (for J sponsorship permission). Each visa category has its nuances. F-1 status is available

6

from kindergarten to post-secondary education.

5. A visa is simply a document that permits a person to enter the United States.

6. Increased national security after the 9/11 attacks led to the creation of the Department of Homeland Security and the restructuring of the Immigration and Naturalization Service into three separate agencies: United States Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement (ICE), and Customs and Border Patrol (CBP). DHS joined with the Department of State (DOS) to create a Student & Exchange Visitor Program (SEVP) and the management and compliance system SEVIS. Oversight of SEVP was given to ICE.\

7. SEVIS is the acronym for the Student & Exchange Visitor Information System that is used to monitor and manage persons in F-1, J-1, or M-1 visa status and their dependents.

8. Schools sponsoring F-1 students must be certified by SEVP. As part of the SEVP certification process, schools must designate one employee as a Principal Designated School Official (PDSO) and at least one additional employee as a Designated School Official (DSO). Only the PDSO and DSO (or multiple DSOs) are given access to the SEVIS database. These international student officials are a primary point of contact for both an F-1 student, and are responsible for SEVIS record terminations.

9. A DSO will work with incoming international students to get the information and documentation needed to create an individual SEVIS record for each. Each student record has a distinct SEVIS number. After record creation is completed, the DSO will print and sign Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status," and forward that document to the student to obtain an F-1 visa from a US consulate, or F-1 visa status approval via an I-539 application with USCIS. Individuals outside the USA request CBP admission in F-1 visa status; individuals in the USA receive F-1 change of status approval with the standard I-94 attachment.

10. After entering the USA, the F-1 student reports to the DSO, enrolls, and begins attending

school, and the DSO updates the SEVIS record to confirm the student is duly enrolled in a full-time program of study.

11. To maintain visa status, F-1 students must follow specific requirements including: maintaining a full-time course load each semester (with an exemption given for the final semester if less than full-time credits are needed to graduate); refraining from any unauthorized employment and only participating in authorized employment whether on-campus or off-campus; reporting to the DSO before taking any actions that affect the SEVIS record such as dropping to part-time status, taking medical leave, withdrawing from the program, participating in academic internships, and changing visa status; reporting to the DSO at the start of each session or semester or use whatever method the DSO requires to confirm enrollment each semester.

12. F-1 student status continues as long as the nonimmigrant continues to study in the USA. The student's I-94 will have a "Duration of Status" or "D/S" annotation rather than a fixed end date. F-1 status includes all periods of approved post-degree completion employment authorization.

13. If F-1 status is terminated, the student is "out of status." A nonimmigrant who is out of status is ineligible to apply for a change of status in the United States to another non-immigrant visa classification and if they remain out of status in the United States for more than 180 days cumulatively they lose the ability to adjust their status to lawful permanent resident pursuant to Section 245(k) of the Immigration and Nationality Act that allows adjustment of status for employment-based visa classifications.

14. If the person has accumulated over 180 days of unlawful presence in the United States and they leave the country, they would be barred for three years from being able to obtain a new visa. An F-1 student whose status has been terminated and who remains in the United States may be accumulating unlawful presence in the United States.

15. US consulates will revoke a visa when they receive information that an F-1 student was charged with a DUI or DWI offense. Consulates rarely provisionally revoke an F-1 visa for any other misdemeanor offenses or derogatory reasons.

16. Both the Department of State and ICE have stated that visa revocation has no effect on visa status. Those statements are correct and F-1 students and their sponsoring schools have relied on them to provide guidance to students with visa revocations. The statement from ICE clearly states that even after visa revocation an F-1 student maintains status, and the agency will contact the DSO to confirm the student is maintaining visa status. There has been no time when ICE terminated a SEVIS record solely due to visa revocation; an FBI criminal check "hit"; or even evidence of a misdemeanor conviction. This is because, by its own guidance, ICE knows that visa revocation does not equate to a loss of visa status or trigger SEVIS record termination.

17. Termination of F-1 status is reflected in SEVIS and students will be notified of their loss of status through their DSO.

18. Termination in the SEVIS system means that the student no longer has F-1 status.

19. A SEVIS record can be terminated due to some action by the F-1 student that requires termination; some mistake by the DSO that triggers termination; or some mistake by an immigration agency that creates a termination event. In short, termination of F-1 status as reflected in the SEVIS record termination does not mean the F-1 student engaged in some misconduct. It can occur even if the student is doing everything required to maintain F-1 visa status. Additionally, the reasons to terminate F-1 status as reflected in a SEVIS record are clearly articulated in SEVIS guidance and regulations. Having a misdemeanor conviction, or merely a fingerprint/name "hit" in the FBI database, does not trigger termination of F-1 status as reflected in the SEVIS record termination, and has never been used as a basis to terminate F-1 status ~~a record~~ (or deny a visa). Additionally,

having a visa revoked by the Department of State is also not, in and of itself, without any further review, a reason to terminate a student's F-1 status as reflected in the SEVIS record.

20. The termination of F-1 status as reflected in the SEVIS record termination is not reviewable by immigration courts.

21. It is my understanding that since DHS has terminated the F-1 status of students in their SEVIS records, the DSO's who would generally be able to issue I-20 forms for reinstatement are taking the position that they are not able to do so.

22. I am not a party to this action or proceeding. I am aware of the facts stated herein of my own knowledge, and, if called to testify, I could and would competently so testify.

Executed on April 21, 2025, in Indianapolis, Indiana.

Signed by:

*Angela D. Adams*

Angela D. Adams, Esq.