UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT DOE,<br><br>    Plaintiff,<br><br>    v.<br><br>KRISTI NOEM, et al.,<br><br>    Defendants. | No.  2:25-cv-01103-DAD-AC<br><br>ORDER GRANTING PLAINTIFF'S MOTIONS TO PROCEED UNDER PSEUDONYM, FOR A PROTECTIVE ORDER AND FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 5) |

This matter came before the court on April 17, 2025 for hearing on plaintiff's motion to proceed under pseudonym and for protective order and plaintiff's motion for temporary restraining order.  (Doc. Nos. 2, 5.)  Attorney Joye Wiley appeared in person on behalf of plaintiff.  Assistant United States Attorney Shelley D. Weger appeared in person on behalf of defendants.  For the reasons explained below, plaintiff's motions to proceed under pseudonym, for a protective order and for a temporary restraining order will be granted.

## BACKGROUND

On April 14, 2025, plaintiff Student Doe filed his complaint against defendants Kristi Noem, Todd Lyons, and Department of Homeland Security ("DHS") for terminating plaintiff's Student and Exchange Visitor Information System ("SEVIS") record, which had the effect of

1

1  terminating plaintiff's F-1 visa status. (Doc. No. 1.) In support of the pending motions, plaintiff
2  presents evidence of the following.

3  Plaintiff, an international student with an F-1 visa, received an email on April 8, 2025
4  from his university notifying plaintiff that "SEVIS has terminated your record" and that the
5  "[e]xplanation" provided by the government was that plaintiff had been "[i]dentified in" a
6  "criminal records check and/or had their VISA revoked." (Doc. Nos. 2-2 at 2; 5-6 at 2.) The
7  email also stated that ICE "agents may investigate to confirm the departure of the student[,]"
8  "[n]o grace period is allowed[,]" and "[r]emaining in the United States on a terminated status may
9  have serious consequences." (Doc. Nos. 2-2 at 3–4; 5-6 at 3–4.) There has been a recent surge in
10 hate crimes, and the White House and DHS have communicated anti-immigrant sentiment. (Doc.
11 No. 2 at 4–5.)

12 Plaintiff has "never been convicted of any crime[,]" and has "never had criminal charges
13 filed against" him. (Doc. No. 5-5 at 2.) He "was detained two times by law enforcement in 2024,
14 but no charges were filed and [he] received correspondence from law enforcement that no charges
15 would be filed for lack of evidence." (*Id.*)

16 Based upon the allegations of his complaint, plaintiff asserts the following claims against
17 defendants: (1) unauthorized SEVIS termination in violation of the Administrative Procedure Act
18 ("APA"); (2) deprivation of procedural due process rights in violation of the Fifth Amendment;
19 (3) unlawful detention in violation of the Fifth Amendment; (4) deprivation of procedural due
20 process in violation of the APA; and (5) arbitrary and capricious SEVIS termination in violation
21 of the APA. (Doc. No. 1 at ¶¶ 37–55.)

22 On April 14, 2025, plaintiff filed a motion to proceed under pseudonym and for protective
23 order. (Doc. No. 2.) On April 15, 2025, plaintiff filed a motion for temporary restraining order.
24 (Doc. No. 5.) That same day, the court required plaintiff to serve defendants with a copy of the
25 complaint, the motion to proceed under pseudonym, the emergency motion for temporary
26 restraining order, and accompanying papers. (Doc. No. 6.) The court also set the deadline for
27 defendants to file any opposition to the pending motions on April 16, 2025 at 4:00 p.m., and set a
28 hearing on the motions for April 17, 2025 at 10:00 a.m. (*Id.*.) The court further ordered that

1  defendants not take any action to remove plaintiff from the United States or out of this District
2  pending the scheduled hearing and unless and until the court ordered otherwise. (*Id.*) Also on
3  April 15, 2025, defendants filed designation of counsel for service. (Doc. No. 7.) On April 16,
4  2025, plaintiff filed proof of service of the required documents. (Doc. Nos. 8, 9.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

28  /////

3

1    The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

## ANALYSIS

### A.    Motion to Proceed Under Pseudonym and for Protective Order

Plaintiff moves to proceed under pseudonym with respect to the public and for a protective order that would: (1) require the parties to redact or file any information identifying plaintiff under seal; (2) limit sharing by defendants' counsel of any information about plaintiff's identity or related personal information beyond what is reasonably necessary for this litigation and to comply with this court's orders; (3) prohibit the use of the information for any purpose outside of this litigation; and (4) prohibit disclosing the identity of plaintiff for purposes of detention or removal during the pendency of this litigation or until further order of the court. (Doc. No. 2 at 7–8.) Defendants filed no opposition to plaintiff's motion to proceed under pseudonym but stated at the hearing that they opposed the motion on the grounds that it was unnecessary.

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). However, the court may "conceal[] parties' identities in order to protect them from retaliation by third parties and also to protect nonparties from reprisals." *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1067 (9th Cir. 2000). "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Where "pseudonyms are used to shield the anonymous party from retaliation, the district court should determine need for anonymity by evaluating the following factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation." *Id.* (citations omitted).

/////

4

1      Here, plaintiff presents evidence that the threatened harm includes "public shame,
2 potential vigilante justice by community members with anti-immigrant sentiment, reputational
3 harm, and possible detention and removal." (Doc. No. 2 at 3–6.)  Plaintiff has provided evidence
4 regarding surging hate crimes, anti-immigrant messaging from the White House and DHS, and
5 the email plaintiff received warning that ICE "agents may investigate to confirm the departure of
6 the student[,]" "[n]o grace period is allowed[,]" and "[r]emaining in the United States on a
7 terminated status may have serious consequences." (Doc. Nos. 2 at 4–5; 2-2 at 3.)  This evidence
8 is sufficient to show that the threatened harm is severe, plaintiff's fears are reasonable, and
9 plaintiff is vulnerable to retaliation.  *See Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025
10 WL 691664, at *7 (E.D. Cal. Mar. 3, 2025) ("Given Petitioner is still at risk of removal should his
11 asylum application be denied, he is also acutely vulnerable to retaliation.").  Because defendants'
12 counsel will have access to plaintiff's identity and be permitted to share that information as
13 necessary for purposes of this litigation, the court identifies no prejudice to defendants, and the
14 public's interest in knowing plaintiff's identity is minimal.  *Doe*, 2025 WL 691664, at *7 ("There
15 is no prejudice to Respondents here — Petitioner's identity is fully known to the Court and
16 Respondents — and the public interest in knowing Petitioner's identity is minimal and
17 outweighed by Petitioner's need for anonymity.").
18      Federal Rule of Civil Procedure 5.2(e) provides that a court may require redaction of
19 private information from court filings "for good cause."  To show "good cause," the party seeking
20 redaction must show that "specific harm or prejudice will result" if the protective order is not
21 granted.  *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011).
22 For the same reasons discussed previously, the court concludes plaintiff has shown good cause for
23 requiring redaction of information identifying plaintiff.  *Beilarus1 v. Mayorkas*, No. 2:24-cv-
24 01925-MJP, 2025 WL 104387, at *2 (W.D. Wash. Jan. 15, 2025) (finding good cause to redact
25 information regarding immigration status).
26      "[O]rdinarily a party must show 'compelling reasons' to keep a court document under
27 seal."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1095 (9th Cir. 2016).  For the
28 reasons discussed above, the court finds compelling reasons to require filing under seal of any

information identifying plaintiff. *Doe*, 2025 WL 691664, at *7 ("While there is a strong presumption in favor of access to public records, for the same reasons stated above [regarding risk of removal], Petitioner has articulated compelling reasons that outweigh the general history of access and the public policies favoring disclosure."). Accordingly, plaintiff's motion to proceed under pseudonym with respect to the public and for a protective order will be granted.

**B. Motion for Temporary Restraining Order**

Plaintiff moves for a temporary restraining order stating that defendants are: (1) enjoined from terminating plaintiff's SEVIS record; (2) required to set aside their termination determination; (3) prohibited from detaining, initiating removal proceedings, or removing plaintiff based on the SEVIS termination; and (4) enjoined from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of his SEVIS record. (Doc. No. 5 at 17–18.) As noted, defendants oppose plaintiff's motion. (Doc. No. 11.)

  1. <u>Likelihood of Success on the Merits</u>

Plaintiff brings two types of claims in his complaint—claims brought under the APA and claims alleging violations of the Fifth Amendment. The court first addresses plaintiff's first and fifth claims for unauthorized SEVIS termination in violation of the APA and arbitrary and capricious SEVIS termination in violation of the APA, respectively. (Doc. No. 1 at ¶¶ 37–40, 52–55.)

    a. *Status Quo Ante Litem*

Defendants first argue plaintiff's requested injunction seeks to alter the status quo by issuing an expedited order that would grant him the ultimate relief he seeks. (Doc. No. 11 at 5.) The court is not persuaded by this argument. Instead, plaintiff properly seeks to restore the status quo *ante litem*. "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (citation omitted). The last uncontested status existed before defendants terminated plaintiff's SEVIS record, placing plaintiff at risk of detention and removal on that basis. *See id.* ("In this case, the status quo ante

6

litem existed before Disney began using its allegedly infringing logo. The interpretation of this concept that Disney advocates would lead to absurd situations, in which plaintiffs could never bring suit once infringing conduct had begun.").

        b.    *APA Legal Framework*

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotation marks and citation omitted). Only "final agency actions are reviewable under the APA." 5 U.S.C. § 704; *see also* 5 U.S.C. § 701 (for purposes of the APA's judicial review provisions, "agency action" has "the meaning[] given" by 5 U.S.C. § 551). An "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Under § 706 of the APA, the court is "to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judg[]ment." *Regents*, 591 U.S. at 16 (internal quotation marks and citation omitted); *see also Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1178 (9th Cir. 2021).

The APA "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary or capricious." *Regents*, 591 U.S. at 16. (internal citations and quotation marks omitted). The district court's role "is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). "Factual determinations must be supported by substantial evidence," and "[t]he arbitrary and capricious standard requires 'a rational connection between facts found and conclusions made.'" *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 759–60 (9th Cir. 2014) (internal citations omitted). This requires the court to ensure that the agency has not, for instance:

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

7

> before the agency, or [an explanation that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*McNair*, 537 F.3d at 993 (quoting *Motor Vehicle Mfrs. Assn., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 492 (9th Cir. 2023) (articulating the same arbitrary or capricious standard).

    c. *Whether Privacy Act Bars Plaintiff from Seeking Relief Under APA*

In their opposition, defendants note that plaintiff "frames several of his claims as arising under the APA," and they argue that "though the APA generally waives the government's immunity," such waiver is not applicable here. (Doc. No. 11 at 6.)

The APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. That waiver, however, is subject to three limitations: (1) the plaintiff must "seek[ ] relief other than money damages"; (2) the plaintiff must have "no other adequate remedy"; and (3) the plaintiff's action must not be "expressly or impliedly forbid[den]" by "any other statute." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (citing 5 U.S.C. §§ 702, 704). Here, defendants argue that plaintiff's claims are subject to the second limitation, namely that "[t]he Privacy Act provides an alternative, adequate remedy to the APA." (Doc. No. 11 at 7.)

To be adequate, however, an alternative remedy must at a minimum provide the plaintiff "specific procedures" by which the agency action can receive judicial review or some equivalent. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The adequacy of the relief available need not provide review identical to that which the APA would provide, so long as the alternative remedy offers the "same genre" of relief. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017). Nonetheless, an alternative remedy will not be adequate "if the remedy offers only 'doubtful and limited relief.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *Bowen*, 487 U.S. at 901).

The court concludes that the Privacy Act clearly does not provide plaintiff another adequate remedy, as plaintiff's ability to seek relief under the Privacy Act is not even "doubtful," but nonexistent. As defendants concede, the Privacy Act provides that an "individual" is "a

8

|   |   |
|---|---|
| 1 | citizen of the United States or an alien lawfully admitted for permanent residence," (Doc. No. 11 |
| 2 | at 7) (citing 5 U.S.C.A. § 552a(a)(2)), but plaintiff "is a national of an undisclosed African |
| 3 | country," (Doc. No. 11 at 7).  Accordingly, as defendants also concede, "the Privacy Act |
| 4 | precludes judicial review of Plaintiff's claims."  (*Id.* at 8.)  Because plaintiff would not qualify for |
| 5 | relief under the Privacy Act, the court concludes that he clearly does not have an alternative, |
| 6 | adequate remedy that limits the APA's waiver of the government's immunity.  *See Stenson* |
| 7 | *Tamaddon, LLC v. United States Internal Revenue Serv.*, 742 F. Supp. 3d 966, 988 (D. Ariz. |
| 8 | 2024) (rejecting the IRS's argument that the plaintiff tax advisory firm is precluded from APA |
| 9 | review because the "plaintiff's clients can file a refund suit," noting that "it is immaterial whether |
| 10 | Plaintiff's clients possess an alternative remedy, as Plaintiff does not"); *Wagafe v. Biden*, No. 17- |
| 11 | cv-00094-LK, 2024 WL 2274349, at *5, 7 (W.D. Wash. May 20, 2024) (rejecting the defendants' |
| 12 | argument that "the INA provides an adequate alternative remedy for the [plaintiffs'] APA claims" |
| 13 | where "precluding district court jurisdiction could foreclose meaningful judicial review of the |
| 14 | [plaintiffs'] claims"); *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 681 (N.D. Cal. 2020) (finding that |
| 15 | the "plaintiffs have no adequate alternative remedy to the APA," noting that courts have rejected |
| 16 | alternative remedy arguments where the process to seek alternative relief would be "arduous, |
| 17 | expensive, and long"); *see also Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1142 (D. Ariz. 2008) |
| 18 | ("District courts have consistently found that there is no adequate alternative remedy available to |
| 19 | aliens seeking adjudication of adjustment of status applications. . . . This Court cannot discern a |
| 20 | reasonable alternative and, thus, concludes that Plaintiff has no adequate alternative remedy."). |
| 21 | ///// |
| 22 | ///// |
| 23 | ///// |
| 24 | ///// |
| 25 | ///// |
| 26 | ///// |
| 27 | ///// |
| 28 | ///// |

9

| | |
|---:|:---|
| 1 | d. *Application of APA* |
| 2 | Plaintiff has provided the court with evidence that defendants terminated plaintiff's |
| 3 | SEVIS record, effectively terminating plaintiff's F-1 status.[1] (Doc. No. 5-6 at 2–4.) This action |
| 4 | constitutes a final decision reviewable under the APA. *See Jie Fang v. Dir. United States* |
| 5 | *Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these |
| 6 | students' F-1 visas marked the consummation of the agency's decisionmaking process, and is |
| 7 | therefore a final order[.]"); *Yerrapareddypeddireddy v. Albence*, No. 20-cv-01476-PHX-DWL, |
| 8 | 2021 WL 5324894, at *7 n.10 (D. Ariz. Nov. 16, 2021) ("Defendants contend this Court lacks |
| 9 | jurisdiction because Yerrapareddypeddireddy has applied for reinstatement and is facing removal |
| 10 | proceedings, both of which render the SEVIS termination non-final. However, the Third Circuit |
| 11 | rejected similar arguments in *Fang v. Director U.S. Immigration & Customs Enforcement*, 935 |
| 12 | F.3d 172 (3d Cir. 2019).") (citation omitted), *aff'd,* No. 21-17070, 2022 WL 17484323 (9th Cir. |
| 13 | Dec. 7, 2022). |
| 14 | Therefore, pursuant to the APA, the court shall "hold unlawful and set aside" this "agency |
| 15 | action" if it is "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in |
| 16 | accordance with law[.]" 5 U.S.C. § 706(2)(A). Here, plaintiff has presented evidence regarding |
| 17 | the official explanation for the termination of plaintiff's SEVIS record. (Doc. No. 5-6.) |
| 18 | According to this official explanation, plaintiff was "[i]dentified in" a "criminal records check |
| 19 | and/or has had their VISA revoked." (*Id.* at 2.) |
| 20 | "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence |
| 21 | for which a sentence of more than one year imprisonment may be imposed (regardless of whether |
| 22 | such sentence is in fact imposed) constitutes a failure to maintain status." 8 C.F.R. § 214.1(g). |

---

[1] Defendants argue termination of the SEVIS record does not equate to termination of plaintiff's F-1 visa status and in fact has no legal consequences. (Doc. No. 11 at 9.) However, defendants cite no authority for this proposition, and district courts addressing terminated SEVIS records have found that such an action necessarily involves terminating the plaintiff's F-1 status. *See, e.g.*, *John Roe, et al.*, 2025 WL 1114694, at *3 (finding that regulations limiting the circumstances in which F-1 student status may be terminated apply to "termination of Plaintiffs' F-1 student status under the SEVIS"). Furthermore, the notification plaintiff received warned that "[r]emaining in the United States on a terminated status may have serious consequences." (Doc. No. 5-6 at 4) (emphasis added).

10

1  However, plaintiff's declaration states that plaintiff has "never been convicted of any crime[,]"
2  and indeed has "never had criminal charges filed against" him. (Doc. No. 5-5 at 2.) He "was
3  detained two times by law enforcement in 2024, but no charges were filed and [he] received
4  correspondence from law enforcement that no charges would be filed for lack of evidence." (*Id.*)
5  According to this evidence, plaintiff is likely to establish that he did not fail to maintain status
6  because he has not been convicted of a crime, much less a crime of violence for which a sentence
7  of more than one year imprisonment may be imposed. 8 C.F.R. § 214.1(g). Furthermore, no
8  other ground for failure to maintain status is at issue here. *See* 8 C.F.R. §§ 214.1(e)–(g).

9  "[T]he Code of Federal Regulations permits termination of a student's F-1 visa status in
10 three ways: 1) by revoking a waiver that the Attorney General had previously authorized under
11 § 212(d)(3) or (4) of the Immigration and Nationality Act; 2) 'by the introduction of a private bill
12 to confer permanent resident status,' or 3) 'pursuant to notification in the Federal Register, on the
13 basis of national security, diplomatic, or public safety reasons.'" *Jie Fang*, 935 F.3d at 176
14 (quoting 8 C.F.R. § 214.1(d)). Revocation of plaintiff's F-1 visa is not among the permitted
15 reasons for terminating his F-1 visa status in the SEVIS system. *John Roe, et al. v. Noem, et al.*,
16 No. 25-cv-00040-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("8 C.F.R. §
17 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in
18 SEVIS based upon revocation of a visa.").

19 Because plaintiff offers evidence supporting the conclusion that neither reason given for
20 termination is permitted by the applicable regulations, plaintiff will also likely show that
21 defendants' decision to terminate his SEVIS record, effectively terminating his F-1 status, was
22 arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in
23 violation of the APA.[2] *See Liu v. Noem et al.*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at 3
24 (D.N.H., Apr. 10, 2025) ("Based on the record before the court, Liu is likely to show that DHS's

---

[2] Because plaintiff is likely to succeed on the merits of at least one of his claims brought under the APA, the court need not address plaintiff's remaining claims. *Liu v. Noem et al.*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at 3 n.2 (Dist. N.H., Apr. 10, 2025) ("Because the court finds that Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth Amendment when it terminated his F-1 status in the SEVIS system.").

11

1  termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was
2  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.");
3  *Isserdasani, et al. v. Noem, et al.*, No. 25-cv-00283-WMC, 2025 WL 1118626, at *5 (W.D. Wis.
4  Apr. 15, 2025) ("Specifically, based on the record currently before the court, Isserdasani is likely
5  to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. §
6  214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with
7  law under 5 U.S.C. § 706(2)(A)."); *John Roe, et al.*, 2025 WL 1114694, at *3 ("Therefore, the
8  Court finds that Plaintiffs are likely to succeed on the allegation that Defendants' termination of
9  Plaintiffs' F-1 student status under the SEVIS is arbitrary and capricious, an abuse of discretion,
10 contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction."); *cf.*
11 *Orlando Language Sch., Inc. v. Holder*, No. 6:13-cv-00703-ORL-37-GJK, 2013 WL 12141400,
12 at *3 (M.D. Fla. May 24, 2013) (finding termination of the plaintiff's SEVIS access was contrary
13 to law under the APA because the applicable statute did not provide for this option as a response
14 to the school's failure to apply for accreditation within one year).

15       e.     *The Court's Authority to Prohibit Removal and Detention*

16       One of the forms of relief plaintiff requests is a temporary stay preventing defendants
17 from removing plaintiff on the basis of his terminated SEVIS record or consequently terminated
18 F-1 visa status. (Doc. No. 5 at 17–18.) Defendants argue that 8 U.S.C. § 1252(g) prohibits
19 district courts from hearing challenges to decisions and actions about whether, when, and where
20 to commence removal proceedings, and that § 1226(e) bars relief that would impact where and
21 when to detain a noncitizen. (Doc. No. 11 at 9–10.)

22       Title 8 U.S.C. § 1252(g) states as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

28 /////

12

Title 8 U.S.C. § 1226(e) states as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

"The Ninth Circuit has held consistently that Section 1252(g) should be interpreted narrowly." *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)). "The focus of Section 1252(g) is to limit 'judicial constraints upon prosecutorial discretion.'" *Id.* "By contrast, Section 1252(g) does not divest courts of jurisdiction over cases that do not address prosecutorial discretion and address 'a purely legal question, which does not challenge the Attorney General's discretionary authority[.]'" *Id.* The Supreme Court has "indicated that the reference to 'execut[ing] removal orders' appearing in that provision should be interpreted narrowly, and not as referring to the underlying merits of the removal decision." *Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–87 (1999)). "The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority." *Hovsepian*, 359 F.3d at 1155.

"District courts have reached different conclusions regarding the scope of § 1252(g) when a party requests a stay of removal." *Fatty v. Nielsen*, No. 17-cv-1535-MJP-BAT, 2018 WL 2244713, at *5 (W.D. Wash. Apr. 5, 2018) (collecting cases). This court is persuaded that § 1252(g) addresses challenges predicated on purported improper use of discretionary authority to commence removal proceedings, which is not at issue here. 8 U.S.C. § 1252(g). Instead, here, plaintiff seeks a temporary stay preventing removal, which is permitted under 8 U.S.C. § 1252(g) where the basis for the stay is distinct from how the government's prosecutorial discretion was deployed. *See Dhillon v. Mayorkas*, No. 10-cv-00723-EMC, 2010 WL 1338132, at *9 (N.D. Cal. Apr. 5, 2010) ("[T]he Court rejects the government's position that § 1252(g) is a jurisdictional bar to the relief requested by the Dhillons-*i.e.,* a stay of removal. As those authorities indicate, the

13

1  stay sought on the removal order is not based on the Attorney General's decision to commence,
2  adjudicate, or execute a remand order within the meaning of § 1252(g).  Indeed, the Dhillons'
3  claim challenging the I-130 petition denial is fully collateral to the removal proceedings[.]");
4  *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1159 (C.D. Cal. 2018) ("Contrary to the Government's
5  assertion, the Court has jurisdiction to hear Petitioners' claims regarding due process violations
6  and to order adequate injunctive relief."); *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168, 1174 (D. Ariz.
7  2012) ("Respondents also argue that under 8 U.S.C. § 1252(g), as amended by the REAL ID Act,
8  the Court lacks jurisdiction to stay Petitioners' removal from the United States. . . . Petitioners
9  are not challenging the Attorney General's discretionary decision to remove them.  Rather they
10 claim that it would be unlawful to remove them before they have had the opportunity to exercise
11 their legal right to challenge CIS's basis for revoking the I–140 Petition.  Because this is a legal
12 claim, not a challenge to the Attorney General's exercise of prosecutorial discretion, § 1252(g)
13 does not deprive the Court of jurisdiction."); *see also Arce v. United States*, 899 F.3d 796, 801
14 (9th Cir. 2018) ("[W]e are guided here, as elsewhere, by the general rule to resolve any
15 ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation, and by the
16 strong presumption in favor of judicial review[.]") (citations omitted).  Here the basis for the
17 requested stay preventing removal is the arbitrary and capricious or unlawful termination of
18 plaintiff's SEVIS record, which is distinct from any potential decision to initiate proceedings.[3]
19 *Id.*  The same reasoning applies to § 1226(e) regarding detention.  *See Jennings v. Rodriguez*, 583
20 U.S. 281, 295 (2018) ("As we have previously explained, § 1226(e) precludes an alien from
21 'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the
22 Attorney General has made regarding his detention or release.'  But § 1226(e) does not preclude
23 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'").
24      Therefore, plaintiff's request to temporarily stay detention and removal on the basis of the
25 SEVIS termination is proper.  *John Roe, et al.*, 2025 WL 1114694, at *3 ("Defendants are

---

[3] Another provision does specifically regulate whether and when injunctions preventing removal are allowed, but that provision, 8 U.S.C. § 1252(f), limits "only permanent injunctions, not stays for temporary relief." *Singh v. United States Citizenship & Immigr. Servs.*, No. 17-cv-01538-JVS-JCG, 2018 WL 6265006, at *2 (C.D. Cal. Mar. 8, 2018) (citing *Maharaj*, 295 F.3d at 965).

14

prohibited from initiating removal proceedings against or deporting either Plaintiff on the basis of the termination of their F-1 student status."); *Zheng v. Lyons*, No. 25-cv-10893-FDS, Doc. No. 8 at 1 (D. Mass. April 11, 2025) ("Defendant Todd Lyons, Acting Director, United States Immigration and Customs Enforcement, and any agents acting under his authority or control, are temporarily restrained . . . from arresting or detaining plaintiff Huadan Zheng, a/k/a Carrie Zheng, under 8 U.S.C. § 1226(a), or otherwise for being unlawfully present in the United States without legal permission or authority, based on the termination or revocation of her F-1 student visa."); *Arizona Student Doe #2 v. Trump, et al.*, No. 4:25-cv-00175-AMM, Doc No. 7 at 2 (D. Ariz. April 15, 2025) ("Defendants are temporarily enjoined for fourteen days from arresting and detaining Plaintiff pending these proceedings, transferring Plaintiff away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings").

2.  <u>Likelihood of Irreparable Harm, Balance of Equities & the Public Interest</u>

Here, plaintiff received an email from his school stating that as a result of the termination of his SEVIS record, ICE agents may investigate to confirm his departure, no grace period is allowed, and "remaining in the United States on a terminated status may have serious consequences." (Doc. No. 5-6 at 3–4.) In the absence of a temporary restraining order, plaintiff may experience detention and deportation, including to a third country, and this risk has left plaintiff "very distressed[.]" (Doc. No. 5-5 at 2–3.) These current and threatened consequences constitute risk of irreparable harm for which an award of monetary damages would not be sufficient. *Liu*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at 4. They also outweigh any minimal hardship defendants may experience. *Id.*

Plaintiff argues the public interest is served by granting the temporary restraining order because it "avoids undermining the missions of U.S. universities, preserves the substantial benefits of international research and collaboration, and prevents potential chilling of international student enrollment." (Doc. No. 5 at 16.) Additionally, based upon the evidence now before the court, public safety is not jeopardized because plaintiff has no criminal convictions and has never even been charged with a crime. (*Id.*) Defendants argue control over

15

1  immigration is a sovereign prerogative. (Doc. No. 11 at 11.) The court is persuaded that the
2  public interest favors plaintiff in this case. *See Liu*, No. 1:25-cv-00133-SE-TSM, Doc. No. 13 at
3  4 ("The balance of the hardships and whether injunctive relief is in the public interest both weigh
4  in Liu's favor. The only argument that the defendants offered on these factors was a concern that
5  a TRO in this case may interfere with ICE's ability to carry out its duties.").

## CONCLUSION

For the reasons explained above,

1. Plaintiff's motion to proceed under pseudonym and for protective order is GRANTED;
2. The court orders that:
    a. Plaintiff has permission to proceed pseudonymously with respect to the public;
    b. The parties are required to redact or file any information identifying plaintiff under seal;
    c. Defendants' counsel may not share any information about plaintiff's identity beyond what is reasonably necessary for the litigation and to comply with this court's orders;
    d. The parties are prohibited from using the protected information for any purpose outside of this litigation; and
    e. The parties are prohibited from disclosing the identity of plaintiff for purposes of detention or removal for the pendency of this litigation or until further order of the court;
3. Plaintiff's motion for a temporary restraining order (Doc. No. 5) is GRANTED;
4. The court orders that, pending the hearing and determination of the motion for preliminary injunction, defendants are:
    a. Enjoined from terminating plaintiff's SEVIS record;
    b. Required to set aside their SEVIS record termination determination;
    c. Prohibited from detaining or removing plaintiff based on the SEVIS termination; and

16

      d. Enjoined from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of his SEVIS record; and

5. The court sets the following schedule with respect to plaintiff's motion for preliminary injunction:

      a. Plaintiff shall file his motion for preliminary injunction by June 2, 2025;

      b. Defendant shall file its opposition to the motion by June 16, 2025;

      c. Plaintiff shall file any reply to the opposition by June 23, 2025;

      d. The motion for preliminary injunction will be heard by the court on July 7, 2025 at 1:30 PM in Courtroom 4;

6. No bond shall be required to be posted by plaintiff pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: **April 17, 2025**

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

17