1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

JOHN DOE,

CASE NO. 2:25-cv-00633-DGE

Plaintiff,

12

v.

ORDER ON MOTION FOR
TEMPORARY RESTRAINING
ORDER (DKT. NO. 3)

13

KRISTI NOEM et al.,

14

Defendant.

15

16                          **I       INTRODUCTION**

17        Plaintiff Doe[1] is a doctoral student at the University of Washington, in good academic

18  standing, and scheduled to graduate in December of 2025.  (Dkt. No. 7 at 3.)  On April 7, 2025,

19  the University of Washington informed Plaintiff his record within the Student and Exchange

20  Visitor Information System ("SEVIS") maintained by Immigration and Customs Enforcement

21  _____

22  [1] A motion for Plaintiff to proceed pseudonymously remains pending.  (Dkt. No. 4.)  By referring
    to Plaintiff as Doe at this stage, the Court expresses no view on that motion.  During a TRO
23  hearing held on April 17, 2025, the Parties confirmed that Defendants are aware of Doe's
    identity and that Plaintiff has disclosed that information to them, and as such, referring to him as
24  Doe in the TRO order would not be an obstacle to compliance.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 1

(ICE) had been terminated and was no longer in an active status.  (*Id.*)  The purported reason for termination was Plaintiff's alleged failure to maintain his nonimmigrant status based on a "criminal records check" and/or a visa revocation.  (Dkt. No. 7-2 at 1.)

Plaintiff brings claims under the Administrative Procedures Act ("APA") and the Fifth Amendment against the Secretary of Homeland Security and the Department, the ICE Acting Director, and other officials (collectively, "Defendants").  Plaintiff moves for a Temporary Restraining Order ("TRO") requiring Defendants to restore his SEVIS record and status, and to prevent the Defendants from initiating removal proceedings based on the termination of his SEVIS record.  (*See* Dkt. No. 3.)  Because Plaintiff is likely to succeed in his argument that Defendants' actions were arbitrary and capricious, and not in accordance with law, the Court will grant the TRO.  *See* 5 U.S.C. § 706(2)(A).

## II      BACKGROUND

### A.  The F-1 Visa Program and SEVIS

Pursuant to the Immigration and Nationality Act ("INA"), a foreign student may enter the United States in a nonimmigrant status to complete a course of study at an approved educational institution.  8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f).  If approved, the State Department will issue a visa allowing the student admission to the United States to pursue their course of study.  *See* 22 C.F.R. § 41.61(b)(1).  If admitted, DHS may administratively designate the student as an F-1 nonimmigrant classification.  8 C.F.R. § 214.1(a)(2).  A key component to admission as an F-1 nonimmigrant student is the presentment of Form I-20, which is "issued in the student's name by a school certified by the Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students."  8 C.F.R. § 214.2(f)(1)(i)(A).  The F-1 student's Form I-20 is endorsed at the time of entry into the United States and the F-1 student is responsible for

"retain[ing] for safekeeping the initial form I-20 or successor form bearing the admission number and any subsequent form I-20 issued to them."  8 C.F.R. § 214.2(f)(1)(ii), (f)(2).

An F-1 student may remain in the United States for the duration of their studies so long as they continue to meet the requirements outlined in the regulations.  8 C.F.R. § 214.2(f)(5)(i) ("Duration of status is defined as the time during which an F–1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students").  If a student "fails to maintain a full course of study without the approval of a [Designated School Official ("DSO")] or otherwise fails to maintain status," they must depart the United States immediately or seek reinstatement.[2]  8 C.F.R. § 214.2(f)(5)(iv); *see also* 8 U.S.C. § 1184(a)(1).

A nonimmigrant student's legal status is governed by the F-1 visa system, which is administered by ICE through its Student and Exchange Visitor Program (SEVP).  *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019).  In turn, SEVIS is an SEVP-managed internet system that tracks and maintains information on nonimmigrant students.  *See* 8 C.F.R. § 214.3(a)(l).  To implement the F-1 visa program, SEVP certifies participating educational institutions, allowing those institutions to issue a Form I-20 in the student's name in

---

[2] A student may seek reinstatement by submitting an I-539, Application to Extend/Change Nonimmigrant status to United States Citizenship & Immigration Service ("USCIS") and a Form I-20 or a successor form indicating a DSO's recommendation for reinstatement.  8 C.F.R. § 214.2(f)(16)(i).  Pursuant to the regulations, a district director "may consider" reinstatement if: (1) student has not been out of status for more than five months at the time of filing or the failure to seek reinstatement within five months was due to exceptional circumstances; (2) student "[d]oes not have a record of repeated or willful violations of DHS regulations; (3) student is pursuing or intending to pursue a full course of study at the school that issued the Form I-20 or successor form; (4) student has not engaged in unauthorized unemployment; (5) student is not deportable pursuant to § 237 of the INA; and (6) USCIS is satisfied the violation of status was beyond the student's control, or the "violation relates to a reduction in the student's course load that would have been within a DSO's power to authorize, and that failure to approve reinstatement would result in extreme hardship to the student."  8 C.F.R.§ 214.2(f)(16)(i)(A)–(F).  USCIS's decision to deny reinstatement is unreviewable.  *See* 8 C.F.R. § 214.2(f)(16)(ii).

SEVIS.[3]  SEVP regulations also govern the termination of F-1 student status in SEVIS.  8 C.F.R. § 214.2(f).  A student may fall out of F-1 status by: (1) failing to meet the regulatory requirements for F-1 student status or (2) via an agency related termination of status.  8 C.F.R. §§ 214.1(d), 214.2(f)(5)(iv).[4]  DHS can terminate an F-1 student's status in three ways: 1) by revoking a previously authorized waiver under 8 U.S.C. § 1182(d)(3) or §1182(d)(4); 2) through the introduction of a private bill in Congress to confer permanent resident status; or 3) if DHS publishes a notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.  8 C.F.R. § 214.1(d).  DHS's ability to terminate an F-1 student's status is limited to the three ways enumerated in § 214.1(d).  *See Jie Fang*, 935 F.3d at 185 n.100.

**B. Defendants Terminate Plaintiff's Record in SEVIS**

Plaintiff is a Chinese national who entered the United States lawfully on an F-1 visa on May 22, 2021.  (Dkt. No. 7 at 3.)  Plaintiff has been continuously enrolled in his doctoral program.  (*Id.*)  Although Plaintiff's F-1 visa expired on May 9, 2022, the most recent Form I-20 issued on his behalf by the University of Washington was valid through December 12, 2025. (*Id.*; Dkt. No. 1 at 5.)

In September 2023, Plaintiff was arrested and charged with, but not convicted of, driving under the influence (DUI) under Washington Revised Code § 46.61.502, a misdemeanor.  (Dkt. Nos. 1 at 5; 7 at 4.)  Plaintiff's criminal defense lawyer, Robert J. Ault, submitted a declaration attesting that Doe was charged under § 46.61.502 in October 2023 and entered a plea of Not Guilty at an arraignment that month.  (Dkt. No. 5 at 1.)  Further, "[a]s of today's date [April 10,

[3] *Study in the States*, Dep't of Homeland Sec. (last accessed Apr. 16, 2025), https://studyinthestates.dhs.gov/site/about-sevis; 8 C.F.R. § 214.2(f)(1)(i)–(iii).

[4] The regulations detail circumstances under which the visa holder may be considered to fail to maintain status, including unauthorized employment, willful failure to provide truthful information to DHS, or certain qualifying criminal convictions.  8 C.F.R § 214.1(e)–(g).

2025], [Doe's] case is still pending and he has not been convicted of any offense." (*Id.*)  The

maximum penalty for a misdemeanor DUI under that section is 364 days imprisonment, plus

fines.  *See* Wash. Rev. Code §§ 46.61.502(5); 46.61.5055.  Under DHS regulations, "[a]

nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which

a sentence of more than one year imprisonment may be imposed (regardless of whether such

sentence is in fact imposed) constitutes a failure to maintain status."  8 C.F.R. § 214.1(g).

Plaintiff learned via email from the University of Washington that his "SEVIS record and

I-20 were marked as 'terminated'" by SEVP as of April 7, 2025.  (Dkt. No. 7-2 at 1.)  The only

information provided regarding the termination was that it related to: "Otherwise failing to

maintain status - individual identified in criminal records check and/or has had their VISA

revoked." (*Id.*)  He has not received any notice or contact from Defendants directly regarding his

termination, nor any opportunity to contest the determination.  (*See* Dkt. No. 7 at 3.)  Plaintiff

fears that termination of his SEVIS record will cause him reputational damage, because "[m]y

academic peers, colleagues, and future employers will inevitably suspect me of having

committed a crime of violence, well beyond my pending misdemeanor DUI charge."  (*Id.* at 4.)

Plaintiff initiated this action on April 9, 2025, arguing that "[t]his arbitrary termination

abruptly stripped Doe of his lawful immigration status, endangers his ability to complete his

doctoral program at the University of Washington, and subjects him to immediate risk of

detention and removal."  (Dkt. No. 1 at 2.)  He alleges three causes of action under the APA:

arbitrary and capricious agency action, action in excess of statutory and regulatory authority, and

action without observance of procedure required by law.  5 U.S.C. §§ 706(2)(A), 706(2)(C),

706(2)(D).  (Dkt. No. 1 at 6–7.)  He further alleges a Fifth Amendment Procedural Due Process

violation.  (*Id.* at 8.)  He seeks a TRO and subsequently a Preliminary Injunction (PI) "requiring

Defendants to restore and maintain Plaintiff's SEVIS record in active status pending final

resolution of this case" and "enjoining Defendants DHS and ICE from initiating removal

proceedings, detaining Plaintiff, or otherwise interfering with Plaintiff's lawful presence and

ability to pursue his academic program, solely based on the claims raised in this Complaint."

(*Id.* at 9.)  He seeks declaratory relief, vacatur of the termination of the SEVIS record, damages

pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and costs.  (*Id.*)

### III    LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO.  "The legal

standard for a TRO is substantially identical to the standard for a preliminary injunction."

*Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).  To obtain

injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a

likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that

the balance of equities tips in favor of the moving party; and (4) that an injunction is in the

public interest.  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  Generally, a TRO

is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

entitled to such relief."  *Id*. at 22.  The moving party has the burden of persuasion.  *Hill v.

McDonough*, 547 U.S. 573, 584 (2006).  "The third and fourth factors, harm to the opposing

party and the public interest, merge when the Government is the opposing party."  *Nken v.

Holder*, 556 U.S. 418 (2009).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to

which the first and third *Winter* factors are analyzed on a continuum; under such standard, a

weaker showing on the merits, combined with a stronger demonstration on the balancing test,

might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are

1   met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011).

2   Under this "sliding scale" method, the movant need only raise "serious questions going to the

3   merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131–1132;

4   *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

## IV      JURISDICTION

6         "Section 704 of the APA provides for judicial review of '[a]gency action made

7   reviewable by statute and final agency action for which there is no other adequate remedy in a

8   court.'" *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 952 (9th Cir. 2017)

9   (quoting 5 U.S.C. § 704). As no statute authorizes judicial review over the termination of SEVIS

10  records, the singular issue here is whether Defendants' termination of Plaintiff's SEVIS record

11  was "final" agency action for which there was no other "adequate remedy." 5 U.S.C. § 704. *C.f.*

12  *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010). For

13  agency action to be deemed final, it must "mark the consummation of the agency's decision-

14  making process" and "the action must be one by which rights or obligations have been

15  determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–

16  178 (1997) (internal quotation marks omitted).

17        As an initial matter, it is apparent that the termination of Plaintiff's SEVIS record is an

18  agency action that implicates "rights and obligations" and may well result in "legal

19  consequences." *Id.*; *see also Jie Fang*, 935 F.3d at 180. Next, the action appears to constitute

20  the consummation of the agency's decimating process for two reasons. First, "there is no

21  statutory or regulatory requirement that a student seek reinstatement" of student status in SEVIS,

22  and even if a student attempts to pursue the administrative procedure for SEVIS reinstatement,

23  there is no "mechanism to review the propriety" of the original termination. *Jie Fang*, 935 F.3d

24

at 182; *see* 8 C.F.R § 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS' decision. If USCIS does not reinstate the student, the student may not appeal the decision.").  Second, since neither immigration judges nor the BIA have the authority to review SEVIS termination or a USCIS denial of reinstatement, there is no proceeding in which a student can contest the agency action at issue here.  *Jie Fang*, 935 F.3d at 185.; *Ghorbani v. I.N.S.*, 686 F.2d 784, 791 (9th Cir.1982); *Tooloee v. I.N.S.*, 722 F.2d 1434, 1438–1439 (9th Cir. 1983).  Thus, the termination of Plaintiff's F-1 student status in SEVIS was not "of a merely tentative or interlocutory nature," but rather a unilateral determination with immediate legal consequences over which Plaintiff has no ability to seek administrative review.  *Bennett*, 520 U.S. at 177–178.  Accordingly, the Court finds it has jurisdiction to proceed.  *C.f. Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order").

## V    ANALYSIS

### A.  Plaintiff is Likely to Succeed in the Argument that Termination of His SEVIS Record was Unlawful

Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Here, based on the limited record before the Court, Plaintiff has demonstrated a likelihood of success on two independent grounds under § 706(2)(A): that Defendants' termination of his SEVIS record was not in accordance with law, and that it was arbitrary and capricious.[5]

### 1.  Not In Accordance with Law

---

[5] Because the Court finds that Plaintiff has established likelihood of success on his APA claim, the Court does not reach his Fifth Amendment Due Process claim at this time.

i.       *Agencies Must Follow Their Own Regulations*

It is contrary to law for an agency to disregard its own regulations and policies.  *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *Wallace v. Christensen*, 802 F.2d 1539, 1552 n.8 (9th Cir. 1986) (an agency is "bound by its own regulations so long as they remain in force.").  As the District of Columbia Circuit has explained:

> In a series of decisions, the Supreme Court has entertained challenges to agency actions that failed to conform to agency regulations. In *SEC v. Chenery Corp*., 318 U.S. 80, 87–88 (1943), the Court held that an agency is bound to the standards by which it professes its action to be judged. In *Accardi,* a case involving a habeas challenge to the denial of suspension of deportation, the Court objected to the agency's 'alleged failure to exercise its own discretion contrary to existing valid regulations.'

*Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 246 (D.C. Cir. 2003), *as amended* (Feb. 11, 2003) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, (1954)) (parallel citation omitted).  Moreover, "'a court's duty to enforce an agency regulation, while most evident when compliance with the regulation is mandated by the Constitution or federal law,' embraces as well agency regulations that are not so required."  *Id.* at 247 (alterations omitted) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)).

The Ninth Circuit has affirmed that "[p]ursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures."  *Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *see also United States v. Nixon*, 418 U.S. 683, 696 (1974)*; Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co*., 284 U.S. 370, 389 (1932).  Courts have framed the obligation for an agency to follow its own regulations as deriving from § 706(2)(A) or other APA provisions.  *See, e.g., Suncor Energy (U.S.A.), Inc. v. United States Env't Prot. Agency*, 50 F.4th 1339, 1352 (10th Cir. 2022) (holding that EPA action violated § 706(2)(A) because it ignored the agency's regulatory definition of "facility"); *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 983–984 (C.D. Cal. 2024) (ICE policy of warrantless "knock

and talk" violated agency's regulations and thus § 706(2)(A)).  Agencies must also adhere to

internal procedures designed to provide protections to individuals.  *Morton v. Ruiz*, 415 U.S. 199,

235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to

follow their own procedures."); *see also Lopez*, 318 F.3d at 247; *Beshir v. Holder*, 853 F.Supp.2d

1, 11 (D.D.C. 2011) (DHS Secretary's discretion to issue procedural rule pausing processing of

adjustment of status applications limited by regulation requiring adjudication in certain

timeframe).

      Accordingly, Defendants are bound to follow their own rules and regulations governing

the proper termination of an F-1 student's record in SEVIS.

      *ii.  Defendants Failed to Follow Their Own Regulations and Procedures*

      On April 17, 2025, the Court held a hearing on the pending TRO motion, during which

counsel for Defendants confirmed that Plaintiff's DUI arrest was the sole reason for his SEVIS

record termination.  That confirmed the action was likely unlawful.  As discussed *supra*, a

student's record in the SEVIS system can be terminated either because the student fails to

maintain status, or when the agency initiates a termination of status.  8 CFR §§ 214.1(d);

214.2(f).  In this instance, Plaintiff states that he maintains full-time enrollment in his doctoral

program at the University of Washington (Dkt. No. 1 at 5), and Defendants have introduced no

evidence to the contrary.  Agency-initiated termination is governed by 8 CFR § 214.1(d), which

enumerates circumstances that result in termination:

> Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

Defendants do not argue that any of these criteria are present here.

1    Additionally, Plaintiff's DUI arrest is not a qualifying crime that could lawfully result in

2    SEVIS termination.  DHS's regulations specifically explain what criminal activity results in

3    failure to maintain status for a nonimmigrant:

4    > A condition of a nonimmigrant's admission and continued stay in the United States is
5    > obedience to all laws of United States jurisdictions which prohibit the commission of
     > crimes of violence and for which a sentence of more than one year imprisonment may be
6    > imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime
     > of violence for which a sentence of more than one year imprisonment may be imposed
7    > (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain
     > status under section 241(a)(1)(C)(i) of the Act.

8    8 CFR § 214.1(g).  Plaintiff's DUI arrest fails to meet these criteria in at least two ways.  One,

9    Plaintiff has not been convicted of any crime, he has only an arrest and charge.  (Dkt. No. 1 at 5.)

10   Two, the maximum penalty for a misdemeanor DUI in Washington is 364 days, which is just

11   short of a year imprisonment.  *See* Wash. Rev. Code §§ 46.61.502(5); 46.61.5055.  Additionally,

12   the DUI likely does not qualify as a "crime of violence."  *See Leocal v. Ashcroft*, 543 U.S. 1, 11–

13   13 (2004) (holding that a Florida DUI was not a "crime of violence" under 18 USC § 16, because

14   it does not involve a "substantial risk" of "using physical force against another person.").  To the

15   extent that Defendants terminated Plaintiff's SEVIS record merely because his name appeared in

16   a criminal records check, that is inconsistent with their own regulation, which renders the

17   decision invalid under § 706(2)(A).  *See supra*.

18   During the April 17 hearing, counsel for Defendants stated that the Government was not

19   relying on 8 CFR § 214.1(d) as granting authority for the termination but rather invoked 8 U.S.C.

20   § 1372.  That statute confers authority to *create* the SEVIS system but says nothing about

21   termination of a student's record in the system.  Contrastingly, 8 C.F.R. § 214.1(d) enumerates

22   the sole grounds under which DHS may initiate the termination of F-1 student's record in

23   SEVIS.  *See Jie Fang*, 935 F.3d at 185 n.100.  When one section of a statutory scheme passes

24

specifically upon the question at hand and the other section is silent, Courts understand the specific to govern the general. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Here, 8 CFR § 214.1(d) speaks specifically to when a SEVIS record may be terminated, 8 U.S.C. § 1372 does not.[6]

Accordingly, termination of the SEVIS record because of the DUI arrest is inconsistent with agency regulations, which renders the decision invalid. *Nat'l Ass'n of Home Builders*, 340 F.3d at 852; *Wallace*, 802 F.2d at 1552 n.8. Because Defendants' termination of Plaintiff's SEVIS record was—based on the limited information currently available—not authorized by and violated their own regulations, Plaintiff is likely to succeed in the argument that the agency action is not in accordance with law under § 706(2)(A).

2. Arbitrary and Capricious for Lack of Explanation

Agency action is considered arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As the Ninth Circuit has explained, the "critical factor in *Motor Vehicle* was that the agency 'submitted no reasons at all' for its decision." *McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) (citing *Motor Vehicle*, 463 U.S. at 50). The *Motor Vehicle* standard has been applied to review individualized agency decisions as well as agency rules.

---

[6] When asked during the hearing if there is a specific provision in 8 U.S.C. § 1372 that provides authority for the termination of a student's SEVIS record, Defendants were unable to provide one.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 12

*See, e.g.*, *Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849, 852 (9th Cir. 2021); *McNeely v. United States Dep't of Lab.*, 720 F. App'x 825, 827 (9th Cir. 2017).

In this instance, Defendant has failed to meet "the general administrative-law requirement that an agency 'articulate a satisfactory explanation for its action.'" *Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022) (quoting *State Farm*, 463 U.S. at 43). Indeed, Defendant has failed to suggest any lawful grounds as to why its action here is lawful under the APA. *Motor Vehicle*, 463 U.S. at 50. Defendants' submission that they "do not concede that Doe has demonstrated a likelihood of success on the merits on his APA claim" but cannot defend it because "DHS and from the Department of State, and Defendants have not completed [factfinding] efforts in time to respond to Doe's motion" is inadequate under governing law. (Dkt. No. 12 at 9.) *C.f. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020).[7] The Court declines to "deny Doe's motion even in the absence of this factual information related to the APA claim." (Dkt. No. 12 at 9.) Indeed, Defendant's failure to provide a single plausibly lawful explanation for its action—an explanation reasonably grounded somewhere in the statutory scheme—is the exact circumstance contemplated by the arbitrary and capricious standard. *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (en banc) ("[*Motor Vehicle*] teaches that even when reversing a policy after an election, an agency may not simply [change courses] without a reasoned explanation.").

Accordingly, Plaintiff is also likely to prevail on the claim that the agency action is arbitrary and capricious for failing to "articulate a satisfactory explanation for its action

---

[7] An agency need not consider every conceivable alternative, but when it is "not writing on a blank slate" it must consider the impact of its actions on vested reliance interests, especially in the immigration context, where individuals make "time-bounded commitment[s], to allow them to, say, graduate from their course of study." *Regents*, 591 U.S. at 32–33.

including a rational connection between the facts found and the choice made." *Motor Vehicle*, 463 U.S. at 43.

**B. Remaining TRO Factors Favor Plaintiff**

As discussed *supra*, Plaintiff has established likelihood of success on the merits of his APA claim. The other injunctive relief factors favor Plaintiff as well. He faces multiple forms of irreparable harm as a result of termination of his SEVIS record, and the balance of equities weigh in his favor.

1. Plaintiff Faces Irreparable Harm

Plaintiff faces several forms of irreparable harm as a result of the termination of his SEVIS record. First, he cannot carry out research on his grant-funded doctoral program without an active SEVIS record. (Dkt. No. 3 at 5.) Accordingly, his research is stalled. Ultimately, if he is unable to complete the research and his doctoral program, he will lose four years' worth of full-time work, face diminished career prospects, and suffer reputational harm. (*Id.* at 12.) Second, while Defendants have not yet placed Plaintiff in removal proceedings, he faces the prospect of detention, removal proceedings, and ultimately deportation because termination of his SEVIS record indicates that he is not maintaining status in his program. *See* 8 U.S.C. § 1227(a)(1)(B) (a person who is not lawfully present is removable). And so long as Plaintiff is out of status, he may be accruing unlawful presence time, which acts as a future bar to admission and reentry to the United States. *See* 8 U.S.C. § 1182(a)(9)(B). Plaintiff's fears are not speculative, as DHS's own public-facing guidance states that a person whose SEVIS record is terminated faces the following consequences:

- Student loses all on- and/or off-campus employment authorization.

- Student cannot re-enter the United States on the terminated SEVIS record.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 14

- Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.

- Any associated F-2 or M-2 dependent records are terminated. [8]

Turning now to examine each irreparable harm in more detail, the Court begins by considering the matter of employment authorization. Multiple courts have held that loss of or delay in obtaining employment authorization is an irreparable harm. *See Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 968 (D. Md. 2020), *order dissolved sub nom. Casa de Maryland, Inc. v. Mayorkas*, No. 8:20-CV-2118-PX, 2023 WL 3547497 (D. Md. May 18, 2023) (a delay in an asylum seeker obtaining work authorization is an irreparable harm because "every additional day these individuals wait will visit[] on them crippling dependence on the charity and good will of others"); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018), *vacated and remanded sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (finding that if the DACA program were terminated, resulting loss of work authorization for DACA recipients would be an irreparable harm). Under these unique circumstances where Plaintiff's continued work and lawful immigration status are interlinked, the prospect of Plaintiff losing his grant-funded work as a doctoral candidate is likewise irreparable. *See e.g., Karakozova v. Univ. of Pittsburgh*, No. 09CV0458, 2009 WL 1652469, at *4 (W.D. Pa. June 11, 2009) (holding that plaintiff, a research assistant who alleged her position was terminated on a discriminatory basis, could show irreparable harm from loss of position because she could lose her H-1B visa and have to leave the country voluntarily or by removal, with no certainty of alternative relief).

---

[8] *See* Dep't Homeland Security*, SEVIS Help Hub: Terminate A Student* (Nov. 7, 2024.) https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

Likewise, courts have held that interruption of educational programs or progress can be an irreparable harm.  For instance, in *Tully v. Orr*, the court held that disenrolling a cadet from the United States Air Force Academy "just prior to his examinations and graduation" would be an irreparable harm where the cadet would face the prospect of having to repeat courses, "delay[] in both his graduation and commissioning," and a "deleterious effect" on his future in the force. 608 F. Supp. 1222, 1225, 1226 (E.D.N.Y. 1985).  Some courts have specifically held that loss of opportunity to participate in post-secondary education programs is an irreparable harm.  *See Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*, No. 24 C 1698, 2025 WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in psychiatry residency is an irreparable harm, though denying injunction on other grounds); *Lujan v. United States Dep't of Educ.*, 664 F. Supp. 3d 701, 721 (W.D. Tex. 2023) (finding that erroneous loss of even one point on Fulbright scholarship application grading would be an irreparable harm, due to loss of opportunity to obtain scholarship).  Here, as discussed, Plaintiff is currently unable to continue in his academic work,[9] and should that condition persist, he faces loss of grants and an inability to complete his degree—which is especially harmful where Plaintiff is just months away from graduation.

Next, the Court considers the threat of removal.  Removal is not by itself an irreparable harm, in part because removal is (in at least some instances) reversible.  *See Nken*, 556 U.S. at 430.  However, in this case, the ordinary harms of removal would compound the other harms Plaintiff faces by effectively eliminating his ability to complete his degree program, causing him

---

[9] At the hearing, Plaintiff's counsel identified Plaintiff's grant is federally funded, which presumably means Plaintiff must maintain lawful status and that termination of Plaintiff's work authorization prevents Plaintiff from engaging in the grant funded work.  The record though is not complete on this issue.  Nonetheless, the Court concludes irreparable harm has been established based on the other harms identified.

1    economic and reputational loss wherever he ultimately resides.  Even if a removal order could be

2    reversed and Plaintiff ultimately repatriated to the United States if he were wrongfully removed,

3    it is unclear if Plaintiff's educational loss could be reversed (e.g., needing to reapply for

4    admission, repeating incomplete coursework, and/or competing for funding to replace lost

5    grants).  *See e.g.*, *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (in case challenging

6    removal conditions during pandemic, finding that deportation was an irreparable harm because

7    plaintiffs could not challenge deportation conditions and get effective relief after removal).  As

8    counsel for Plaintiff explained at the April 17 hearing, doctoral programs typically involve

9    supervision of the doctoral candidate by an adviser with specialized knowledge and reputation in

10   the field, so the inability to complete a doctoral program due to status termination and removal

11   cannot necessarily be remedied with re-starting another program at a different time and place.

12           Finally, as Plaintiff points out, he may also be accruing unlawful presence as a result of

13   the SEVIS revocation, which other courts have held is irreparable.  In *Guilford College v.*

14   *McAleenan*, the court set aside a USCIS policy memorandum purporting to redefine how accrual

15   of unlawful presence is calculated for students deemed to be out-of-status on F or J visas.  389 F.

16   Supp. 3d 377, 384 (M.D.N.C. 2019).  With respect to injunctive relief, the Court found that

17   unlawful or unknowing accrual of unlawful presence would be irreparable because it could

18   expose plaintiffs to three- or ten-year reentry bars, which are not judicially reviewable.  *Id.* at

19   394.  Other courts, including in this district, are in accord.  *See Garcia v. United States Customs*

20   *& Border Prot.*, No. CV215468DMGJEMX, 2021 WL 4815945, at *4 (C.D. Cal. Aug. 20, 2021)

21   (granting motion for preliminary injunction to prevent accrual of unlawful presence, and

22   rejecting arguments that discretionary waiver or possibility of voluntary removal would render

23   the harm not irreparable); *Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 WL 3928016, at

24

*2 (W.D. Wash. Aug. 21, 2008) ("The Court finds that halting the accrual of unlawful presence time and/or unauthorized employment for all class members during the pendency of this litigation will continue the *status quo ante litem,* will prevent irreparable harm to class members and their families, and will not cause defendants any undue hardship.").  During the April 17 hearing, Defendants could not confirm or deny if they consider Plaintiff to currently be out of status.  This places Plaintiff in a Catch-22: the University has advised him not to engage in any employment for risk of making him ineligible for reinstatement (*see* Dkt. No. 7-2 at 2), but Defendants suggest his failure to continue his grant-funded research may make him ineligible going forward.

      2.   There is a Public Interest in Enforcement of Valid Regulations, and Balance of Equities Favor Plaintiff

      "When the government is a party, the balance of equities and the public interest factors merge."  *Nken*, 556 U.S. at 435.  The public has a vested interest in a federal government that follows its own regulations.  As one court framed it: "the public has a strong interest in having a [government] that conducts itself fairly and according to its stated regulations and policies."  *Cooney v. Dalton*, 877 F. Supp. 508, 515 (D. Haw. 1995); *see also Eight N. Indian Pueblos Council, Inc. v. Kempthorne*, No. CV 06-745 WJ/ACT, 2006 WL 8443876, *5 (D.N.M. Sept. 15, 2006) ("It is in the public interest that federal agencies comply with their own policies and with federal statutes.").  Here, Defendants assert that the public interest factors tip in their favor because the "public interest lies in the Executive's ability to enforce U.S. immigration laws." (Dkt. No. 12 at 9.)  However, Defendants have provided *no indication* that they complied with the relevant statutory scheme in "enforcing immigration laws" in this case.  (Dkt. No. 12 at 9.) Accordingly, this is a set of circumstances where the government and its decision-making processes will be best served by judicial review of a decision—and maintenance of the status quo

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 18

1    during that review—that appears both unlawful and likely to cause Plaintiff irreparable harm.

2    Moreover, Defendants have not put forth evidence of how a TRO would cause them injury or

3    harm.  For these reasons, the Court determines that the balance of the equities and public interest

4    factors tip sharply in Plaintiff's favor.

5         Finally, the Court addresses Defendant's argument that Plaintiff is "not only seeking to

6    preserve the status quo on a temporary basis" but is rather requesting "an order compelling the

7    defendants to change the status quo" because "he seeks emergency restoration of a record that

8    has already been marked as terminated." (Dkt. No. 12 at 6.)  Courts have long held that the

9    "status quo ante litem" for the purposes of considering a temporary restraining order or

10   preliminary injunction "refers not simply to any situation before the filing of a lawsuit, but

11   instead to 'the last uncontested status which preceded the pending controversy.'"  *GoTo.com,*

12   *Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd.*

13   *v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963).  An interpretation of "status quo as the moment

14   before filing a lawsuit but after alleged misconduct began "would lead to absurd situations, in

15   which plaintiffs could never bring suit once infringing conduct had begun."  *Id*.

16        This standard has been applied to government action as well as private disputes.  *See,*

17   *e.g.*, *Doe #1 v. Trump*, 957 F.3d 1050, 1068–1069 (9th Cir. 2020); *S.A. v. Trump*, No. 18-CV-

18   03539-LB, 2019 WL 990680, *13 (N.D. Cal. Mar. 1, 2019).  For example, in *S.A.*, the court

19   concluded that the status quo ante litem was the point before DHS stopped processing

20   conditionally approved beneficiaries under a dual refugee/parole program.  *See S.A.,* 2019 WL

21   990680, at *13.  Accordingly, the court vacated DHS's decision to mass-rescind conditional

22   approvals for 2,714 beneficiaries pending a final determination on the merits because that

23   maintained the status quo ante litem.  *Id*. at *17.  Similarly, in this case, the "legally relevant

24

1  relationship between the parties before the controversy arose," describes the state of affairs *prior*

2  to the termination of Plaintiff's SEVIS record.  *Ariz. Dream Act Coalition v. Brewer*, 757 F. 3d

3  1053, 1060–1061 (9th Cir. 2014).  Accordingly, Defendant's argument that "the relief Doe seeks

4  is not a prohibitory injunction to maintain the status quo" is frustrated by decades of Ninth

5  Circuit caselaw.  (Dkt. No. 12 at 2.)

6       Finally, Defendant advances a confused argument that posits Plaintiff seeks "a final

7  judgement on the merits" because a TRO is part of the final relief outlined in his complaint.

8  (Dkt. No. 12 at 2.)  Defendants are correct that "it is generally inappropriate for a federal court at

9  the preliminary-injunction stage to give a final judgment on the merits."  *University of Texas v.*

10  *Camenisch*, 451 U.S. 390, 395 (1981).  But what the *Camenisch* court was communicating was

11  that findings of fact and conclusions of law made by a court in a preliminary injunction or TRO

12  posture are preliminary and do not bind the court at the trial on the merits.  *Id*. at 395–398.  Thus,

13  it is not appropriate to enter a *final judgement* at a TRO stage.  *Id*.  That is not what the Court is

14  doing here.  As the *S.A.* court emphasized, "nothing in *Camenisch* holds that the scope of a

15  preliminary injunction cannot overlap with the relief requested for an eventual final judgment."

16  *S.A*, 2019 WL 990680, at *16 n.59.  Here, as in *S.A*., the order makes no final findings on the

17  merits and merely returns the parties to the status quo ante litem.

18       **C.  The Court Will Not Require a Bond**

19       Under Federal Rule of Civil Procedure 65(c), in granting a PI or TRO, the court must

20  require a movant to pay security "in an amount that the court considers proper to pay the costs

21  and damages sustained by any party found to have been wrongfully enjoined or restrained."  The

22  Ninth Circuit has held that "[d]espite the seemingly mandatory language, Rule 65(c) invests the

23  district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*,

24

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 3) - 20

572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (cleaned up). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen,* 320 F.3d at 919). Here, Defendants request that the Court impose a bond "in an amount the Court determines to be appropriate." (Dkt. No. 12 at 10.) Defendants do not account for any costs they allege they will face if the TRO is issued erroneously, and the Court perceives none. Here, Defendants will face no cost from Plaintiff continuing his studies as he did before his SEVIS was terminated, and negligible or zero cost from restoring his SEVIS status to active. Plaintiff's only criminal history is the misdemeanor DUI for which he has been charged but not convicted, and he poses little if any risk to the public. The Court therefore exercises its discretion to waive the bond requirement.

## VI    CONCLUSION

Accordingly, it is ORDERED that Plaintiff's Motion for a Temporary Restraining Order (Dkt. No. 3) is GRANTED. Defendants are ENJOINED for a period of fourteen days from the date of this order, as follows:

1) Defendants shall restore Plaintiff's F-1 student record and I-20 in the Student and Exchange Visitor Information System (SEVIS);

2) Defendants shall set aside the April 7, 2025 F-1 student record and I-20 termination as to Plaintiff;

3) Defendants shall not terminate Plaintiff's student record and I-20 in SEVIS absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f).

4) Defendants are prohibited from detaining or transferring Plaintiff out of this Court's jurisdiction, or ordering the detention or transfer of Plaintiff out of this

Court's jurisdiction, as a result of the termination of his F-1 student record or I-20 in SEVIS on April 7, 2025; and

5) Defendants are prohibited from initiating removal proceedings against or deporting Plaintiff on the basis of the April 7, 2025 termination of his F-1 student record or I-20 in SEVIS.

It is furthered ORDERED that the security requirement of Rule 65(c) is waived.

Dated this 17th day of April, 2025.

David G. Estudillo
United States District Judge