UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JELENA LIU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-716-JPH-TAB |
| | ) | |
| KRISTI NOEM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum in Support of Motion for Preliminary Injunction**

**Introduction**

Less than three weeks ago, the plaintiff was living the life of a graduate student at Indiana University - Indianapolis. The only thing that distinguishes her from many other students is that she is a citizen of another country. She has been allowed to attend school in the United States by virtue of being afforded F-1 status, a lawful non-immigrant status allowing international students to study in the United States provided they abide by the applicable rules. Despite the fact that Ms. Liu has done so, with no prior notice whatsoever the defendants ("the United States") terminated her F-1 status. And Ms. Liu is not alone: across the country, international students have had their status terminated, unlawfully and without process, and during the past ten days, nationwide at least fifteen temporary restraining orders have been issued by federal courts to enjoin these unlawful practices.

[1]

Ms. Liu is suffering immediate and irreparable harm, as well as the risk of further irreparable harm, as the termination of her F-1 status not only prevents her from continuing her studies but requires her to uproot her life and depart the United States. If she does not, she is at risk of involuntary removal with all its attendant consequences. Her education has been disrupted, and her future has been placed in jeopardy. She is deemed to be unlawfully present in the United States, which may significantly affect her future chance of reinstating her F-1 student status.[1] And she is forced to live with the fear that at any moment she may be detained, placed into removal proceedings, and involuntarily deported.

This removal of status represents final agency action by the United States, and the United States's actions violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B), as they are arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law and the Constitution. Moreover, students have an entitlement to their F-1 status unless specific regulatory standards are met. Inasmuch as those standards were not met here, and as Ms. Liu has been afforded no opportunity to demonstrate her continuing entitlement, the actions of the defendants also violate basic principles of due process guaranteed by the Fifth Amendment to the United States Constitution.

---

[1]    Pursuant to 8 C.F.R. § 214.2(f)(16)(i)(A), a student may be reconsidered for reinstatement to F-1 student status, at the discretion of the United States, only if they have not been out of status for more than 5 months, absent exceptional circumstances.

Because of the serious, continuing, and irreparable harm that Ms. Liu is suffering, she requests that this Court grant a preliminary injunction setting aside the termination of her F-1 status and prohibiting the United States from detaining her or initiating removal proceedings against her until it may consider whether to convert the temporary restraining order into a preliminary injunction.[2]

### Legal background

Federal law provides that noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Students enter the United States on an F-1 visa issued by the United States Department of State.[3] Then, once they enter, students are granted F-1 student status and are permitted to remain in the United States (called "duration of status") as long as the student continues to meet the requirements established by the regulations governing the student's visa classification.[4]

---

[2]    On April 15, 2025, Ms. Liu—along with several since-dismissed plaintiffs—filed her Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3) in this cause. In its Order Denying TRO and Directing Further Proceedings, this Court ordered that "[i]f Plaintiffs filed a motion for preliminary injunction, briefing will follow the schedule in Local Rule 7.1(c)(3)." (Dkt. 24 at 11). In light of this Court's directive, the plaintiff has refiled her preliminary-injunction motion. Portions of this brief are taken, substantially verbatim, from previous briefing in this cause.

[3]    U.S. Dep't of State-Bureau of Consular Affairs, *Student Visa*, https://travel.state.gov/content/travel/en/us-visas/study/student-visa.html (last visited Apr. 13, 2025).

[4]    U.S. Dep't of Homeland Sec., *Study in the States-Maintaining Status*, https://studyinthestates.dhs.gov/students/maintaining-status (last visited Apr. 13, 2025).

The Department of Homeland Security's ("DHS") Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status. "SEVIS" is a web-based database that DHS uses to track and monitor, among other persons, nonimmigrant students who have F-1 status.

An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through the SEVIS system. 8 C.F.R. § 214.3. Each school has a Designated School Official ("DSO") who monitors the student and who issues an I-20 form, which memorializes the student as someone admitted to the United States pursuant to an F-1 visa. *See* U.S. Dep't of Homeland Sec., *Study in the States*, https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited Apr. 13, 2025). In addition to a traditional educational course of study, F-1 students may also participate in two types of practical training programs. 8 C.F.R. § 214.2(f)(10)(ii). Curricular practical training, or "CPT," includes "alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school" that is "an integral part of an established curriculum." 8 C.F.R. § 214.2(f)(1)(i). Optional Practical Training, or "OPT" consists of temporary employment that is directly related to the student's major area of study. 8 C.F.R. § 214.2(f)(1)(ii).

Once a student has completed his or her course of study and any accompanying practical training, they have sixty days to either depart the United States or transfer their status to another institution. 8 C.F.R. § 214.2(f)(5)(iv). If a student voluntarily withdraws from the F-1 program, they have 15 days to depart the United States. *Id.* However, "an F-1 student who fails to maintain a full course of study without approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure." *Id*. Under the regulation, DSOs must report through SEVIS to SEVP when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2).

The regulations distinguish between two different ways in which a student may lose status: a student may "fail[] to maintain status," or there may be an agency-initiated "termination of status." Students fail to maintain their F-1 status if they do not satisfy the requirements imposed on F-1 students by federal regulations: if they fail to maintain a full course of study, engage in unauthorized employment, provide false information to DHS, or are convicted of a crime of violence for which a sentence of more than one year can be imposed.  8 C.F.R. § 214.2(e)-(g).

An agency-initiated termination of F-1 status—the other route to a loss of status—"is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang* v. *Dir. U.S. Immig. & Cust. Enforc.*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status only: (a) when "a waiver authorized on his or her behalf under" 8 U.S.C. § 1182(d)(3) or (4) is revoked; (b) when "a private bill to confer permanent resident status

on such alien" is introduced; or (c) when notification of the termination is published in the Federal Register "on the basis of national security, diplomatic, or public safety reasons." Termination of F-1 status is reflected in SEVIS, and students will be notified of their loss of status through their DSO. The revocation of a person's visa—that is, the paper that allowed them to originally enter the country or would permit their reentry—is distinct from the termination of a person's status. DHS itself indicates that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) at 3, available at https://www.ice.gov/doclib/sevis/pd/visa_revocations_1004_04.pdf (last visited Apr. 10, 2025). (*See also* Dkt. 27-1 ¶ 16).

To initiate removal of a noncitizen after their nonimmigrant status is revoked, DHS must file a Notice to Appear, which is the charging document that initiates immigration court proceedings. Once the Notice to Appear is filed, the individual may be taken into custody under a Warrant of Arrest. An Immigration Judge in a removal proceeding has no ability to review and reverse a SEVIS termination because the process is collateral to removal proceedings. *See Jie Fang,* 935 F.3d at 183. Angela Therefore, the termination of a student's lawful status, as has occurred here, may lead to detention and the initiation of removal proceedings with the student not being able to contest the validity of the termination that is the cause for the removal. The termination of status, as reflected in

[6]

the SEVIS record, represents final agency action for purposes of review under the Administrative Procedure Act. *See id.* at 185.

**Facts**

Ms. Liu is currently residing in Indianapolis and is a student the second year of a two-year graduate program at Indiana University in human computer interaction. (Declaration of Jelena Liu, Dkt. 27-17 ¶¶ 1-2). She is a citizen of China, and received F-1 status in 206 for her undergraduate studies at then-IUPUI (*Id.* ¶¶ 3-4). She initially pursued a major at IUPUI that was chosen by her parents, but proved not to be a good fit for her. (*Id.* ¶ 5). As a result, she began to experience depression and chose a new major course of study. (*Id.*).

Her advisor at IUPUI recommended that she decrease her course load to support her mental health. (*Id.* ¶ 6). She did as her advisor had recommended, but in lower her course load she mistakenly dropped to many classes to maintain her F-1 status. (*Id.* ¶ 7). She discovered this when she had returned to China for a visit during winter break and attempted to return to the United States, only to find out that her F-1 vis had been revoked. (*Id.* ¶ 8). However, she applied to have the visa reinstated and it was approved and reissued to her in 2018. (*Id.* ¶ 9).

Ms. Liu completed her undergraduate studies in 2022 and started her graduate studies in January of 2024, and has had her F-1 status continuously since that time. (*Id.* ¶¶ 10-11). She has done very well in school and has a 3.42 grade point average. (*Id.* ¶ 12).

Ms. Liu has never committed any criminal offenses and is complying with all the rules and regulations imposed on students with an F-1 status. (*Id.* ¶ 13). She is not employed and is a full-time student. (*Id.*). At the time that she was informed that her F-1 status had been terminated she was a full-time student in good standing at Indiana University Indianapolis. (*Id.* ¶ 14).

Nevertheless, on April 11, 2025, she received an email from the Director of International Student and School Services at Indiana University - Indianapolis that states that:

> A recent review of student records brought to our attention that your SEVIS record and lawful F-1 status in the United States was terminated yesterday, by the U.S. Department of Homeland Security. The reason for the termination listed in SEVIS is, 'OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.' The government has provided no further information about the reason for the termination of your F-1 SEVIS record.
>
> If you are currently employed, you are advised to cease employment immediately.

(*Id.* ¶ 20 and attachment). Ms. Liu has been given no further explanation for this termination and does not believe there are any grounds to terminate her F-1 status. (*Id.* ¶¶ 21-22).

Of course, with this termination Ms. Liu is facing detention and removal from the United States, which is problematic for a number of reasons. (*Id.* ¶ 23).

Ms. Liu is a transgender female and since she has been in Indianapolis she has been receiving gender-affirming care through Eskenazi Health. (*Id.* ¶ 15). She has been receiving both estradiol (estrogen) and spironolactone (to suppress testosterone) since May of 2020. (*Id.*). She receives her medication in pill form and is required to take them daily. (*Id.* ¶ 16). She has been told by her treatment staff that missing medication may interfere with her transition. (*Id.*). She sees her transgender treatment staff every three months and her mental health doctor every month. (*Id.* ¶ 17). She receives blood tests every three months to make sure that her hormones are at proper levels and to make sure all else is well. (*Id.* ¶ 18). Ms. Liu has been diagnosed with gender dysphoria, a well-recognized condition that is related to her gender dysphoria and that is acknowledged to cause depression and anxiety. (*Id.* ¶ 19).[5]

If she is detained and placed in removal proceedings, her transgender care may be interrupted. (*Id.* ¶ 24). This could certainly be a problem as she needs to receive her medications to continue her transition and keep her hormones at their correct level. (*Id.*). And her concerns about this are certainly warranted as it has been reported that U.S. Immigration and Customs Enforcement has altered contracts for at least two detention centers to remove transgender care requirements following President Trump's Executive

---

[5]    *See* American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th edition, Text Revision (DSM-V-TR) at 302.85 (for post-pubertal adolescents and adults).

Order that targets what is described as "gender ideology extremism."[6]

Moreover, if she is sent back to China there is no assurance that she will be able to continue to receive her gender-affirming as generally in China a parent must consent to gender-affirming care for even their adult child and she is unsure if her patents will consent. (*Id.* ¶ 25). Moreover, physicians in China are more reluctant to provide gender-affirming medical care than in Indiana.

Additionally, of course, the loss of her F-1 status means she may never be able to complete her studies. (*Id.* ¶ 26). Her plan has been to obtain an internship in the United States after her education to continue her career development. (*Id.* ¶ 27). This will not be possible without her F-1 status. (*Id.* ¶ 27).

Not only has she lost status, and is facing possible detention and removal, but now that she has been declared to be out of status she may be accumulating unlawful status that, if she accumulates 180 days, may bar her from obtaining a new visa to return to the United States after departure or removal. (Declaration of Angela Adams, Dkt. 27-1 ¶ 14).

Given all this, it is not surprising that Ms. Liu is suffering increased anxiety and distress. (Dkt. 27-17 ¶ 28). She is extremely nervous about her future and is not leaving her home as she is concerned that she may be detained as she no longer has lawful status. (*Id.* ¶¶ 28-29).

---

[6]    *See,* Matt Sledge, THE INTERCEPT, *ICE is Erasing Rules that Protected Trans Immigrants,* Mar. 27, 2025, https://theintercept.com/2025/03/27/ice-trans-immigrant-detainees/ (last visited Apr. 21, 2025).

## Preliminary-Injunction Standard

In order to determine whether a preliminary injunction should be granted, the Court weighs several factors: (1) whether the plaintiff has established a prima facie case, thus demonstrating at least a reasonable likelihood of success at trial; (2) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and (4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *See, e.g., Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 675 (7th Cir. 1987). The heart of this test, however, is "a comparison of the likelihood, and the gravity of two types of error: erroneously granting a preliminary injunction, and erroneously denying it." *Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 590 (7th Cir. 1984).

## Argument

I.    **Ms. Liu will prevail on her legal claims**

A.    **The termination of Ms. Liu's F-1 status violates the Administrative Procedure Act**

1.    **The United States's termination of Ms. Liu's F-1 status is a final agency action subject to judicial review**

The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency

[11]

action within the meaning of a relevant statute, is entitled to judicial review thereof." 5

U.S.C. § 702. As a prerequisite to review, the APA requires "final agency action,"5 U.S.C.

§ 702, which generally means that the agency has "completed its decisionmaking

process" *Franklin v. Mass.*, 505 U.S. 788, 797 (1992). A reviewing court may hold unlawful

and set aside an agency's action to the extent it is, among other things, "(A) arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary

to constitutional right, power, privilege, or immunity; (C) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without

observance of procedure required by law." 5 U.S.C. § 706. The actions of the defendants

are unlawful under any of those measures, and relief must be granted under the APA.

   In *Jie Fang*, the Third Circuit answered whether the termination of F-1 status and

a corresponding SEVIS record is a final agency action. There the court addressed a

situation in which the United States had terminated the F-1 status and SEVIS records of

students for alleged fraudulent enrollment in a fictitious American university. 953 F.3d

at 174.   After reviewing the law cited above, the regulatory requirements, and the

cognizable grounds for status termination, the court held "that the termination of the

students' F-1 visa status in the manner that occurred here is not akin to the initiation of

the agency's decisionmaking process. Rather, it is the culmination of the process." *Id.* at

183-84. The court rejected the argument that the students could seek reinstatement of

their F-1 status, or challenge the termination in removal proceedings, as an immigration

judge cannot review status termination. *Id.* at 185. "The order the terminating the students' F-1 visa status was therefore a final order for jurisdictional purposes because there was no further opportunity for review." *Id.*

All of the court's holdings in *Jie Fang* apply here, as has been made abundantly clear by the federal courts nationwide reviewing this current wave of status and SEVIS terminations. (Dkts. 27-4 at 4 [*Zhou v. Lyons*, 2:25-cv-2994 (C.D. Cal.) (concluding that the termination of status was a final agency action subject to judicial review)]; 27-5 at 10 [*Student Doe v. Noem et al.*, 2:25-cv-1103-DAD-AC (E.D. Cal.) (same)]; 27-7 at 9 [*Jane Doe 1 et al. v. Bondi et al.*, 1:25-cv-1998-VMC (N.D. Ga.) (same)]; 27-14 at 3 [*Patel v. Bondi et al.*, 1:25-cv-101-SPB-WSH (W.D. Pa.) (same)]; 27-15 at 8 [*Doe v. Noem et al.*, 2:25-cv-633-DGE (W.D. Wash.) (same)]). The termination of Ms. Liu's status is a final agency action subject to this Court's review.

### 2. The United States's termination of Ms. Liu's F-1 status was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law and the Constitution

Ms. Liu has complied with federal law, has fulfilled all the requirements necessary to maintain her F-1 status, and has remained in good standing at her school. Nonetheless, the United States has terminated her status. This is unlawful.

To maintain lawful F-1 status, individuals must maintain a full course of study, and they may not engage in unauthorized employment, provide false information to the Department of Homeland Security, or engage in "criminal activity." 8 C.F.R. § 214.2(e)-

(g). Criminal activity is specifically defined to include convictions "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." Ms. Liu has not failed to maintain a full course of study, engaged in unauthorized employment, or provided false information to the Department of Homeland Security. Nor does she have a criminal conviction as defined in 8 C.F.R. § 214.1(g): she has no criminal record at all. She has done nothing, therefore, that could cause her to "lose" status by her own actions.

In the absence of any of those activities, ICE can *only* terminate her F-1 status under three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d 172, 185 n. 100. The United States has done none of those things, and it does not appear to have argued to the contrary in any of the pending F-1 termination cases.  Instead, DHS terminated Ms. Liu's F-1 status, caused that termination to be reflected in a tracking system, and communicated that termination to her university.

This is a prime example of an agency action that must be reversed under the APA as an "agency is not free to ignore or violate its regulations when they remain in effect." *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 59. 526 n.20 (D.C. Cir. 1978). "An agency's failure to follow its own regulations has traditionally been recognized as reviewable

under the APA." *Head Start Fam. Educ. Program. Inc. v. Coop. Educ. Agency 11*, 46 F.3d 629, 633 (7th Cir. 1995) (footnote and further citation omitted). "Thus, an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Nat'l Env. Dev. Assn's Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (quotation and citation omitted).

In resolving requests for temporary restraining orders, a veritable landslide of district courts over the past ten days have reached the same conclusion when addressing these terminations, including a district court within the Seventh Circuit. In *Isserdasani et al v. Noem et al.*, 3:25-cv-283-WMC (W.D. Wis.), the court issued a temporary restraining order as to a student-plaintiff whose status was terminated. (Dkt. 27-16). Describing that the only purported ground for that student's status termination was a dismissed misdemeanor charge, the court found that no grounds supported the United States' action. As such, the court concluded that "plaintiff Isserdasani has shown a substantial, if not overwhelming, likelihood of success on the merits of his claim in Count 2 that DHS violated the APA when it summarily terminated his F-1 student status in SEVIS without cause." (Dkt. 27-16 at 9). Further, said the court, "[s]pecifically, based on the record currently before the court, Isserdasani is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A)." (*Id.* at 9-10).

[15]

This analysis is echoed by a chorus of other courts addressing these status terminations and granting temporary restraining orders against them:

- "Plaintiff has shown a likelihood of success on the merits of his claim that the Government violated the APA when it terminated Plaintiff's SEVIS record and, in effect, his F-1 status. Based on the record before the Court, Plaintiff is likely to show that ICE exceeded its legal authority in terminating Plaintiff's SEVIS record by failing to comply with 8 C.F.R. § 214.1(d), and that the termination was arbitrary, capricious, an abuse of discretion, or otherwise unlawful." (Dkt. 27-4 at 5 [*Zhou v. Lyons*, 2:25-cv-2994 (C.D. Cal.)]).

- "Because plaintiff offers evidence supporting the conclusion that neither reason given for termination is permitted by the applicable regulations, plaintiff will also likely show that defendants' decision to terminate his SEVIS record, effectively terminating his F-1 status, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA." (Dkt. 27-5 at 11 [*Student Doe v. Noem et al.*, 2:25-cv-1103-DAD-AC (E.D. Cal.)]).

- "Since none of those conditions are applicable here, Plaintiffs are likely to show that Defendants' termination of their F-1 status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A)." (Dkt. 27-7 at 9-10 [*Jane Doe 1 et al. v. Bondi et al.*, 1:25-cv-1998-VMC (N.D. Ga.)]).

- "None of those three circumstances appear to be present in this case, as the record before the Court indicates that no waiver has been revoked, no private bill has been introduced, and no notification in the Federal Register has been published. An agency's unexplained refusal to follow its own regulations effecting individuals' procedural benefits poses a high probability that the agency is not acting in accordance with the APA." (Dkt. 27-10 at 4-5 [*Ratsantiboon v. Noem et al.*, 0:25-cv-1315-JMP-JFD (D. Minn.)]).

- None of these mechanisms have been employed in this case. 8 C.F.R. § 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa. *See Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). Moreover, Plaintiffs' academic record and lack of criminal

history fails to support an alternative basis for termination of their F-1 status; at any rate, DHS's decision does not purport to rely upon such a reason. (Dkt. 27-11 at 7 [*Roe et al. v. Noem et al.*, 2:25-cv-40-DLC (D. Mont.)]).

- "Liu has shown a likelihood of success on the merits of his claim in Count 2, that DHS violated the APA when it terminated his F-1 student status in the SEVIS system. Based on the record before the court, Liu is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law." (Dkt. 27-12 at 3 [*Liu v. Noem et al.*, 1:25-cv-133-SE-TSM (D.N.H.)]).

- "With respect to DHS terminations, it does not appear that DHS terminated Patel's SEVIS registration or terminated her F-1 visa pursuant to its limited authority to do so." (Dkt. 27-14 at 4 [*Patel v. Bondi et al.*, 1:25-cv-101-SPB-WSH (W.D. Pa.)]).

- "Accordingly, termination of the SEVIS record because of the DUI arrest is inconsistent with agency regulations, which renders the decision invalid. Because Defendants' termination of Plaintiff's SEVIS record was—based on the limited information currently available—not authorized by and violated their own regulations, Plaintiff is likely to succeed in the argument that the agency action is not in accordance with law under § 706(2)(A)." (Dkt. 27-15 at 12 [*Doe v. Noem et al.*, 2:25-cv-633-DGE (W.D. Wash.)]).

The same result must issue here. Ms. Liu's status termination has occurred contrary to

DHS's regulations and the law, and the United States has failed to comply with the APA.[7]

**B.    Ms. Liu is likely to prevail on her due process claim**

It is beyond debate that the Due Process Clause of the Fifth Amendment applies

to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)

---

[7]    In opposing the issuance of a temporary restraining order in this cause, the United States has characterized the termination of students' F-1 status as an issue of mere recordkeeping. Suffice it to say that is most assuredly not the case: while the termination of a student's F-1 status is reflected in, and schools are notified through, SEVIS, at issue here is the substantive decision of the United States to terminate this status.

("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). A plaintiff claiming a violation of their right to procedural due process must establish "(1) a protected property interest; (2) a deprivation of that property interest by someone acting under color of . . . law; and (3) a denial of due process." *Booker-El v. Superintendent*, 668 F.3d 896, 900 (7th Cir. 2012) (citation omitted). These standards are met here.

## 1.    Ms. Liu has a protected property interest in her F-1 status

"[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (citations omitted). Such an interest attaches whenever "benefits are a matter of statutory entitlement for persons qualified to receive them." *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). Thus, in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the Supreme Court reiterated that property interests are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577. In other words, "[a] protected property interest exists only when the [government's] discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met,'" *Booker-El*, 668 F.3d at 900 (quoting *Brown v.*

[18]

*City of Michigan City*, 462 F.3d 720, 729 (7th Cir. 2006))—that is, such an interest exists when a benefit "can be revoked only 'for cause,'" *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979)). Time and again, both the Supreme Court and the Seventh Circuit have reiterated these fundamental principles. *See also, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978); *Bishop v. Wood*, 426 U.S. 341, 344-45 (1976); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Rebirth Christian Academy Daycare, Inc. v. Brizzi*, 835 F.3d 742, 746-47 (7th Cir. 2016); *Colburn v. Trustees of Ind. Univ.*, 973 F.3d 581, 589 (7th Cir. 1992); *Farmer v. Lane*, 864 F.2d 473, 478 (7th Cir. 1988); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987).

Here, an international student's F-1 status may only be terminated for "good cause." As noted, "the ability to terminate an F-1 visa is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. That regulation provides only three circumstances under which a student's F-1 status may be terminated: (a) when "a waiver authorized on his or her behalf under" 8 U.S.C. § 1182(d)(3) or (4) is revoked; (b) when "a private bill to confer permanent resident status on such alien" is introduced; and (c) when notification of the termination is published in the Federal Register "on the basis of national security, diplomatic, or public safety reasons." *See also, e.g., In re Beck*, 2008 WL 3919071, at *2 (BIA July 24, 2008) (nonprecedential) ("With a few unusual exceptions, *see* 8 C.F.R. § 214.1(d),

[19]

the regulations do not authorize the DHS, or any other entity, to 'terminate' or 'revoke'

an alien's F-1 status; instead, the regulations contemplate only that an alien admitted in

F-1 status may . . . fall 'out of status' or 'fail to maintain status.'").

The inability to terminate a student's F-1 status unless specific preconditions are

met confers a property interest and, with it, the protections of the Due Process Clause.[8]

### 2.    Ms. Liu has suffered a deprivation of her property without being afforded any process whatsoever

Insofar as Ms. Liu possesses a property interest in maintaining her F-1 status, the

remaining questions to be asked are whether they suffered a deprivation of their property

and whether constitutionally adequate process was provided. *See Booker-El*, 668 F.3d at

900. Neither can be seriously disputed.

---

[8]      Ms. Liu acknowledges that the district court in *Louhghalam v. Trump*, 230 F. Supp. 3d 26 (D. Mass. 2017), concluded that "F-1 plaintiffs have no property or liberty interest in [their] visas and thus no due process claim with respect to the supposed revocation." *Id.* at 36.  A visa, however, differs significantly from an immigration status: a visa is merely an entry document— the plaintiffs in *Louhghalam* were both lawful permanent residents detained at Boston Logan International Airport based on an Executive Order prohibiting entry from seven specific countries—and says very little about an individual's status.

The United States has also previously relied on *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *5-6 (W.D. Va. Oct. 16, 2018), as support for its contention that students lack a property interest in their F-1 status.  But that case arose when a student sued his university for "the ministerial act of modifying [his] SEVIS record": to the extent that record implicated the plaintiff's immigration status, the court concluded only that any due process "is the prerogative of and provided in the immigration courts, not the hallways of Virginia Tech."  The court did not even purport to address any process that the United States is obligated to provide, although it appeared to assume that the termination of a student's F-1 status may be meaningfully challenged through the immigration system. As this case makes clear, that is simply not true.

The deprivation here is clear. Ms. Liu's F-1 status was terminated such that she cannot continue her studies in the United States and must instead promptly depart the country: this is the quintessential deprivation of property. *See, e.g., Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983) (describing actions even short of "revocation or nonrenewal" of a license that constitute a deprivation of property), *overruled on other grounds by Brunson v. Murray*, 843 F.3d 698, 713-14 (7th Cir. 2016). And this is not a case that hinges on the occasionally difficult determination of *how much* process is due, for absolutely no process was afforded to her. The fundamental requisite of due process of law is the opportunity to be heard," *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), and at the very least due process thus requires "some kind of notice and . . . some kind of hearing," *Goss v. Lopez*, 419 U.S. 565, 579 (1975); *see also, e.g., Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990) (noting that "the Court usually has held that the Constitution requires some kind of hearing before the State deprives a person of liberty or property" and collecting cases) (emphasis omitted). Here, absolutely none of the hallmarks of due process were provided to Ms. Liu prior to—or even after—the termination of her F-1 status.

It is not enough, as the United States has contended previously, that Ms. Liu may seek reinstatement of her F-1 status or that she will be afforded process if and when removal proceedings are initiated. The reinstatement of F-1 status is wholly discretionary with the United States, appears to be limited to unforeseeable events such as "serious injury or illness," "a natural disaster," or a school's "oversight," and does not even allow

[21]

for an appeal. *See* 8 C.F.R. § 214.2(f)(16); *see also Jie Fang*, 935 F.3d at 183. Moreover, it appears that the school officials who are required to t issue the forms recommending reinstatement, 8 C.F.R. § 214.2(f)(16)(i), are not doing so. (Dkt. 27-1 ¶ 21). And, if all that were not enough—and it is—any contention that this is sufficient process is the functional equivalent of saying that a recipient of public benefits has no right to challenge the termination of those benefits because she may always reapply. *But see Goldberg v. Kelly*, 397 U.S. 254, 263-64 (1970). Nor do potential removal proceedings afford meaningful process. Not only is the termination of a student's F-1 status not reviewable in these proceedings (Dkt. 27-1 ¶ 20) but Ms. Liu has lost her F-1 status *today*: she cannot continue her education and she is required to immediately depart the United States or risk detention and involuntary removal (and the accrual of unlawful presence time) if she does not. The United States's willingness to potentially afford her process at some indeterminate point in the future *if* she chooses to stay in the country without lawful status, *when* removal proceedings are initiated against her, and *if* those proceedings allow for a challenge to the termination of her F-1 status cannot be reconciled with fundamental due-process principles (which, among other things, require a pre-deprivation hearing). *See Jie Fang*, 935 F.3d at 183-84. And, of course, an order of involuntary removal would carry significant collateral consequences on an individual's ability to return to this country, *see* 8 U.S.C. § 1182(a)(9)(A), and the United States's insistence that students must

[22]

risk these consequences simply to challenge the termination of their F-1 status would dramatically disincentivize the exercise of their constitutional rights.

The process-less termination of Ms. Liu's F-1 status thus also runs afoul of the Fifth Amendment.

## II.    The other factors weigh in favor of a preliminary injunction

The severe and irreparable harm that Ms. Liu is enduring and will continue to face in the absence of equitable relief is plain. Of course, she already faces the disruption of her education and the rest of her life. (Dkt. 27-17 ¶¶ 23-29). But the most significant harm arises from the fact that she may be swept from her home, her campus, or the city streets, placed in a detention facility, and subjected to involuntary removal—including to a country of which she is not a citizen. Not surprisingly, this is causing her anxiety and distress. (*Id.* ¶ 29). She is not leaving her home out of fear that she may be detained. (*Id.* ¶ 28). And the potential for her detention is particularly devastating insofar as she is transgender and has been receiving medical and mental health care for diagnosed gender dysphoria that she likely will not be able to receive if she is detained. (*Id.* ¶¶ 15-19; *supra* at 9-10 & n.6). Indeed, this care may not be available to her in China if she is involuntarily removed. (Liu Decl. ¶ 25). All of this is the terror that she lives with daily, despite the fact that she has complied with every requirement necessary to maintain her lawful status in the United States. And, on top of all this, she may also be accruing unlawful presence

time, which could negatively impact any future entry to the United States.  (Dkt. 27-1 ¶¶ 13-14).

    This is all irreparable harm, and courts across the country have had little difficulty in so finding.  (Dkts. 27-2 at 1 [*Kshatri v. Lyons*, 2:25-cv-553-MHH (S.D. Ala.)]; 27-3 at 2 [*Arizona Student DOE #2 v. Trump et al.*, 4:25-cv-175-TUC-AMM (D. Ariz.)]; 27-4 at 5 [*Zhou v. Lyons*, 2:25-cv-2994 (C.D. Cal.)]; 27-5 at 15 [*Student Doe v. Noem et al.*, 2:25-cv-1103-DAD-AC (E.D. Cal.)]; 27-6 *Hinge v. Lyons*, 1:25-cv-1097-RBW (D.D.C.) (only docket text accessible)]; 27-7 at 11-12 [*Jane Doe 1 et al. v. Bondi et al.*, 1:25-cv-1998-VMC (N.D. Ga.)]; 27-8 [*Doe v. Noem et al.*, 1:25-cv-10904-PBS (D. Mass.) (only docket text accessible)]; 27-9 at 1 [*Zheng v. Lyons*, 1:25-cv-10893-FDS (D. Mass.)];  27-10 at 3-4 [*Ratsantiboon v. Noem et al.*, 0:25-cv-1315-JMP-JFD (D. Minn.)]; 27-11 at 7-8 [*Roe et al. v. Noem et al.*, 2:25-cv-40-DLC (D. Mont.)]; 27-12 at 3-5 [*Liu v. Noem et al.*, 1:25-cv-133-SE-TSM (D.N.H.)]; 27-13 at 1 [*Wu et al. v. Lyons*, 1:25-cv-1979-NCM (E.D.N.Y.)]; 27-14 at 4-5 [*Patel v. Bondi et al.*, 1:25-cv-101-SPB-WSH (W.D. Pa.)]; 27-15 at 14-18 [*Doe v. Noem et al.*, 2:25-cv-633-DGE (W.D. Wash.)]; 27-16 at 10 [*Isserdasani et al v. Noem et al.*, 3:25-cv-283-WMC (W.D. Wisc.)]).

    On the other hand, the United States will suffer no harm if a preliminary injunction issues. Even if there were some basis to terminate Ms. Liu's F-1 status—and there is not—there was no compelling need for the United States to act with such profound dispatch and to do so without affording the most rudimentary opportunity for her to be heard. A preliminary injunction will merely maintain the status quo that existed

before early April of this year. And it would certainly "serve the public interest to ensure that defendants follow the law." *Friends of Blue Mound State Park v. Wis. Dep't of Nat. Res.*, 2024 WL 1328478, at *4 (W.D. Wis. Mar. 28, 2024).

## Conclusion

All the requirements for the issuance of a preliminary injunction are met and one should issue ordering the United States to set aside the termination of Ms. Liu's F-1 status, as reflected in her SEVIS records, and prohibiting the United States from detaining or initiating removal proceedings against Ms. Liu.[9]

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Sarah L. Burrow
LEWIS KAPPES
One American Square, Suite 2500
Indianapolis, IN 46282
317/639-1210

---

[9]    Inasmuch as a preliminary injunction will not cause any monetary injuries to the United States, it should issue without bond. *See, e.g., Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (noting cases that "allow a district court to waive the requirement of an injunction bond [where] the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction").

fax: 317/639-4882
SBurrow@lewis-kappes.com

Attorneys for Plaintiffs