UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JELENA LIU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:25-cv-00716-JPH-TAB |
| | ) |
| KRISTI NOEM, U.S. SECRETARY OF HOMELAND SECURITY, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

The Court properly denied the Plaintiff's Motion for Temporary Restraining Order. Similarly, there is no sufficient legal or factual basis to grant her Motion for Preliminary Injunction. The Plaintiff sued because she received an email from Indiana University telling her that her "lawful F-1 status in the United States was terminated." But while the Department of Homeland Security maintains the Student and Exchange Visitor Information System or "SEVIS" System of Records, DHS does not "revoke" student visas. Indeed, the SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. Accordingly, the Plaintiff is unlikely to prevail on the merits of her claim against DHS.

Moreover, the Plaintiff does not claim facts that establish irreparable harm and her SEVIS record has now been reactivated. For these reasons, the Court should deny her Motion for Preliminary Injunction.

**LEGAL AND FACTUAL BACKGROUND**

**A. Statutory Background**

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to

enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").

To be admitted in F-1 status, an applicant must first obtain an I-20 form from their university and present the I-20 to a U.S. embassy in their home country and meet certain other criteria. 22 C.F.R. § 41.61(b)(1). If the international student qualifies, the U.S. Department of State will issue the international student a nonimmigrant visa, which is the document allowing the student entry into the United States under the conditions described in federal regulations governing the admissibility of nonimmigrant students. *See id*.; 8 C.F.R. § 214.2(f)(1). If an individual is admitted to the United States as a nonimmigrant student under § 1101(a)(15)(F)(i), DHS may administratively designate them with "F-1" nonimmigrant classification. 8 C.F.R. § 214.1(a)(2).

To maintain F-1 status, a student must "pursue a full course of study" or "engage in authorized practical training[.]" *Id*. § 214.2(f)(5)(i).

### B. SEVIS

Through statute, Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1).

Accordingly, the Secretary of Homeland Security created SEVIS, "which is a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, Student and Exchange Visitor Information System (available at: https://www.ice.gov/sevis/overview) (last visited Apr. 12, 2025). ICE maintains SEVIS records in DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States.").

Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. (Ex. 1, Watson Decl. ¶ 35.) The authority to issue or revoke visas for nonimmigrant students like the Plaintiff's lies with the Department of State, not DHS. (Ex. 1, Watson Decl. ¶ 36.) SEVIS does not control or necessarily reflect a nonimmigrant student's immigration status. (*Id.*)

### C. Loss of Nonimmigrant Status

An international student may violate the terms of their F-1 nonimmigrant status in several ways. First, if the international student violates any of the terms in the regulations governing nonimmigrant students, they may lose their F-1 status. *See* 8 C.F.R. § 214.2(f) (describing the requirements of maintaining nonimmigrant student status); 8 U.S.C. § 1184(a)(1); Ex. 2, Student in the States, SEVIS Termination. For instance, if an "F–1 student [] is unable to complete the

3

educational program within the time listed on Form I–20" they are "considered out of status." 8 C.F.R. § 214.2(f)(7). And, if a nonimmigrant student fails to comply with the other regulations at 8 C.F.R. § 214.2(f), he or she may become inadmissible and "will depart from the United States." 8 U.S.C. § 1184(a)(1).

Second, the Department of State may revoke an F-1 visa "at any time, in [the Secretary of State's] discretion." 8 U.S.C. § 1201(i)(" the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation."); 22 C.F.R. § 41.122(a)("A consular officer, the Secretary, or a Department official to whom the Secretary has delegated this authority is authorized to revoke a nonimmigrant visa at any time, in his or her discretion."). A revocation may be immediate, prudential, or provisional. *See* 22 C.F.R. §§ 41.122(b), 42.82. If the Department of State immediately revokes a visa, the individual may be removable under 8 U.S.C. § 1227(a)(1)(B). In contrast, a prudential revocation, absent other factors, does not have a corresponding ground of removability. (Ex. 1, Watson Decl. ¶ 35.)

If a student loses nonimmigrant student status, the student or the school may seek reinstatement. *See* 8 C.F.R. § 214.2(f)(16). To do so, the student must submit a form I-539 to U.S. Citizenship and Immigration Services (USCIS). *Id.*; Ex. 3, Study in the States, Reinstatement.

### D. Claim by Jelena Liu

According to Plaintiff's Complaint, Jelena Liu is a citizen of China who is a graduate student at Indiana University in Indianapolis. (Dkt. 26.) Ms. Liu had an F-1 visa in 2016, but fell out of status at some point in time. (Dkt. 26 ¶ 35.) She learned this when she left the United States and returned and was notified that the visa had been revoked. (*Id.*) The visa was subsequently reinstated. (*Id.*) On or about April 4, 2025, she received a notification from Indiana

4

University that her F-1 status had been terminated. The reason given was "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Dkt. 1-1.) Ms. Liu does not allege that she is being detained by ICE or that she is in administrative removal proceedings. (Dkt. 26.)

The Administrative Record shows that on or about April 5, 2025, the Department of Homeland Security conducted a search of records, which resulted in a positive "hit" through a criminal database regarding an arrest of the Plaintiff. (AR 001; 31.) DHS then forwarded the results to the State Department for its review and to take any action it deemed appropriate. (AR 1-2.)

On April 26, 2025, Plaintiff's SEVIS status was restored to "active" status. (Ex. 4.)

The Plaintiff brings this cause of action under the Administrative Procedure Act, 5 U.S.C. § 706(2). (Dkt. 26 at 9-10.) Plaintiff also alleges that her due process rights have been violated. (Dkt. 26 at 10.)

## STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

A preliminary injunction is an emergency remedy issued to minimize the hardship to the parties pending the ultimate resolution of the suit. *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In this circuit, injunctive relief is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied. *See Duct–O–Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509

(7th Cir. 1994); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314–15 (7th Cir. 1994); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992).

## ARGUMENT

### I. <u>Plaintiff Is Not Likely To Succeed on the Merits</u>

#### A. Plaintiff Fails to State a Claim Under the Due Process Clause

Plaintiff claims that Defendants' termination of her SEVIS immigration record without adequate notice and the opportunity to meaningfully challenge the termination violates due process. (Dkt. 26 at 10.) The Plaintiff is incorrect. Ms. Liu does not have a protected interest in her SEVIS record and, even if she did, the process available to her satisfies the Fifth Amendment.

"For a plaintiff to establish a procedural due process claim, it must show that (1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)). Plaintiffs have no property interest in a SEVIS record. *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that plaintiff did not have a property interest in his SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students). Additionally, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases).

For instance, in *Zhao*, a nonimmigrant student on an F-1 visa "dropped below the

6

requisite number of credit hours" so his university updated SEVIS to terminate his nonimmigrant status. *Zhao v. Virginia Polytechnic Institute & State University*, 2018 WL 5018487, at *1–2. (W.D. Va. Oct. 16, 2018). In response, he sued his university and alleged that it had violated his Fifth Amendment due process rights by terminating his SEVIS record. *See id*. at *4–5. The district court, however, dismissed his claim because "termination of Zhao's SEVIS record . . . in the SEVIS database, a clerical duty performed as a preliminary matter and in accordance with federal regulations . . . does not itself engender due process protections." *Id.*

Furthermore, even if Plaintiff had a protected property interest in her SEVIS record, the process afforded her would satisfy the Fifth Amendment. The process due under the Fifth Amendment is determined by weighing the interest involved with the burden of providing additional procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Here, the review procedures available to the Plaintiff satisfies due process. If the Plaintiff has actually lost her lawful nonimmigrant F-1 status as she alleges, she could seek reinstatement administratively from USCIS. 8 C.F.R. § 214.2(f)(16) provides that U.S. Citizenship and Immigration Services (CIS) may consider reinstating a student who makes a request for reinstatement on Form I-539, Application to Extend/Change Nonimmigrant Status, accompanied by a properly completed Form I-20 or successor form indicating the DSO's recommendation for reinstatement. *Id.*; *see also* Ex. 3, Study in the States, Reinstatement.

And although Plaintiff has not alleged that she has been placed in removal proceedings, the procedures available to plaintiffs in immigration court more than complies with the Fifth Amendment. 8 U.S.C. § 1229a; *Camara v. Holder*, 705 F.3d 219, 223–24 (6th Cir. 2013) (rejecting due process challenge to removal proceedings).

### A. Plaintiff Is Unlikely to Succeed on Her APA Claim

#### a. The Privacy Act Bars APA Review

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 701(a)(1) [which] provides that Chapter 7 of the APA, including § 702's waiver of sovereign immunity, does not apply to cases in which 'statutes preclude judicial review.'" *Id.*

Here, the Privacy Act bars Plaintiff's APA claim regarding her record. The Privacy Act allows individuals to challenge data contained in a government system of records in federal court and establishes a comprehensive scheme for such claims. 5 U.S.C. § 552a(g)(1). However, that statute prohibits most noncitizens from filing suit challenging records under the Privacy Act. *See* 5 U.S.C. §§ 552a(a)(2). Therefore, she does not have a valid claim under the APA because the Privacy Act bars such claims. 5 U.S.C. §§ 701–704; As such, the United States has not waived sovereign immunity. 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249, 279 n. 35 (D. Conn. 2008) ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens like [plaintiff] from suing federal agencies to correct their records" and noting that an APA claim would fail under § 702); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act."). Moreover, the Court would lack jurisdiction over any such a claim because Plaintiffs have not exhausted their administrative remedies as required by the Privacy Act. *Barouch v.*

*United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 40–41 (D.C. Cir. 1987).

    b. *The Agency's Action is Not Final*

The APA provides judicial review only for final agency action. 5 U.S.C. § 704. Agency action is final only if (1) it marks "the consummation of the agency's decisionmaking process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Here, the agency's action is not final because no decision has been made on the Plaintiff's nonimmigrant status. According to ICE, changing a SEVIS record to "terminated" does not terminate an alien's nonimmigrant status in the United States. Watson Decl. ¶ 10. Thus, the SEVIS record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation of any agency decision-making process regarding the student's nonimmigrant status.

Even if Plaintiff's nonimmigrant status (rather than just her SEVIS record) was at issue in this case, Plaintiff could administratively challenge the relevant agency decisions. *See* 8 C.F.R. § 214.2(f)(16); 22 C.F.R. § 41.122(b). Further, the Plaintiff cannot establish that the change in her SEVIS record determines her rights or obligations as to her nonimmigrant status or that any legal consequences have flowed from the change of their SEVIS record to set the status as terminated. The SEVIS record is a recordkeeping tool used by DHS and universities to manage the Student and Visitor Exchange Program. *See* 8 U.S.C. § 1372(c). As indicated by ICE, it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Watson Decl. ¶ 10. Rather, it is record keeping action conducted under DHS's authority to

9

collect information and maintain records under 8 U.S.C. § 1372. *See Zhao*, 2018 WL 5018487, at *6 (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence,* No. CV-20-01476-PHX-DWL, 2021 WL 5324894 (D. Ariz. Nov. 16, 2021) (similar as to ICE's termination of a SEVIS record). Accordingly, Plaintiff has not identified an agency action that qualifies as final under the APA.

c. *Plaintiff Cannot Enjoin a Removal Action*

As discussed above, there is no allegation that DHS has initiated removal proceedings against the Plaintiff or that she has been detained. Nevertheless, Plaintiff's Motion alleges that they are "at risk of involuntary removal with all its attendant consequences." (Dkt. 28 at 2.) To the extent Plaintiff seeks an injunction barring the government from initiating removal proceedings, the Court lacks jurisdiction or authority to entertain such a claim.

To initiate the removal process, DHS would first issue the Plaintiff a notice to appear at an immigration hearing. 8 U.S.C. § 1229(a). Once removal proceedings are initiated, a noncitizen is entitled to counsel and to have his or her case heard by an immigration judge. *See* 8 U.S.C. § 1229a. If an immigration judge orders a noncitizen removed, he or she can move for reconsideration and appeal to the Board of Immigration Appeals, then the Seventh Circuit. *See* 8 U.S.C. § 1252.

Based on its plain text, the APA does not apply to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). Both limitations apply here. The Immigration and Nationality Act expressly forecloses judicial review of a decision to execute an order of removal. 8 U.S.C. § 1252(g); *Kightlinger v. Napolitano*, 500 Fed. Appx. 511, 515 (7th Cir. 2013) ("District courts do not have

10

jurisdiction over an APA challenge to federal-agency action when another federal statute specifically precludes review.... Here, 8 U.S.C. § 1252 specifically precludes district-court review of Kightlinger's order of removal."); *Garcia v. Dep't of Homeland Sec.*, 2019 WL 7290556, at *3 (N.D. Ill. 2019); *Albarran v. Wong*, 157 F. Supp. 3d 779, 786 (N.D. Ill. 2016). And the Executive Branch is exercising its discretion to remove Gaona Rojas notwithstanding the pending I-130 petition. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483, 487 (1999) (describing the decision to execute removal orders as an exercise of discretion); *Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) ("[T]he APA is not a useful tool for aliens challenging immigration decisions."); *Ardestani v. INS*, 502 U.S. 129, 133 (1991) ("Congress intended the provisions of the Immigration and Nationality Act ... to supplant the APA in immigration proceedings."); *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

### III. Plaintiff Cannot Show Immediate Irreparable Harm

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. NRDC,* 555 U.S. 7, 22 (2008) . "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012); *see also Michigan v. United States Army Corps of Eng'rs*, No. 10-3891, 2011 U.S. App. LEXIS 17714 (7th Cir. 2011); *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting

11

authorities); *League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

Plaintiff's claim does not demonstrate immediate, irreparable harm sufficient to warrant extraordinary injunctive relief. DHS has not initiated removal proceedings, and the Plaintiff is not being detained. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."); *Jelena Liu, et al. v. Dept. of Homeland Security*, Case No. 1:25-cv-00716-JPH-TAB (Dkt. 24) (April 17, 2025 order denying similar motion for temporary restraining order where plaintiffs were not in removal proceedings); *Chinmay Deore, et al. v. Dept. of Homeland Security*, 2:25-cv-11038-SJM-DRG (Dkt. 20) (April 17, 2025 order denying motion for temporary restraining order).

Moreover, her SEVIS record has been voluntarily turned back to "active" by DHS, as have many others around the United States. *See Hu v. Dept. of Homeland Security*, Case No. 4:25-cv-00028-PPS-JEM (Dkt. 22) (April 29, 2025 order denying motion for preliminary injunction in SEVIS record lawsuit).

Plaintiff alleges that if detained, she will not receive her medical care for gender dysphoria. But as discussed above, she has not been detained and her SEVIS status is active. Accordingly, this claim is highly speculative. Plaintiff's allegations are speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id.* at 414.

She also claims that she will be unable to complete her plan to obtain an internship in the

12

United States and continue her career development. These claims, in addition to being highly speculative, do not show irreparable harm. Her F-1 status only gave her the opportunity to study in the United States; not work here. And "[m]onetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted). Additionally, Plaintiff's SEVIS record has been reactivated so there is no barrier to her attending classes or working, assuming she is otherwise eligible to do so. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (while injunctive relief may be ordered to prevent reputational harm, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence").

### A. The Balance of Equities and Public Interest Favor the Government

The balance of equities and public interest factors "merge when the Government is the opposing party." *See Nken*, 556 U.S. at 435 (2009). A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, this factor weighs heavily in the Government's favor. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 750 (9th Cir. 1992). And the public interest in enforcement of United States immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981)*.*

Congress has instilled in the Secretary of Homeland Security significant authority to administer and enforce U.S. immigration laws, including those governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). And directly applicable here, Congress has mandated that DHS develop and administer a "[p]rogram to collect information relating to nonimmigrant foreign students." *See* 8 U.S.C. § 1372. When a governmental entity is prevented by a court "from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury;" and this irreparable injury arises even if the governmental entity might not, after following its statutory scheme, take any negative action against the party seeking the injunction. *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (staying injunction entered by district court). The Government's interest is "infringed" by the restrictions on its ability to investigate and make determinations about various issues and it is the interference with *this process* causes the irreparable harm and hardship. *Id*. Granting Plaintiff with the extraordinary relief that he seeks will effectively undermine DHS's authority to enforce the provisions of the Immigration and Nationality Act relating to the Department's ability to update and maintain the information in SEVIS and, as such, to change SEVIS record status to "terminated" as needed, in order to carry out the purposes of the program. The public interest would not be served by the Court commandeering the authority of the agency.

## CONCLUSION

For the above reasons, the Court must deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

JOHN E. CHILDRESS
Acting United States Attorney

By:     */s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney
Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Shelese.Woods@usdoj.gov
Telephone No: (317) 226-6333
Fax No: (317) 226-6125

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, a copy of the foregoing was filed electronically. Service of this filing will be made on the ECF-registered counsel by operation of the Court's electronic filing system:

*/s/ Shelese Woods*
Shelese Woods
Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204